Floyd **FEATHERSTON,**
Petitioner-Appellant,

v.

John **MITCHELL, Attorney General**
of the United States, et al.,
Respondents-Appellees.

No. 27379.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1969.

Certiorari Denied Feb. 27, 1970.
See 90 S.Ct. 945.

Alan Sam Glast, Ben F. Foster, Ralph Langley, San Antonio, Tex., for petitioner-appellant; Foster, Lewis, Langley, Gardner & Hawn, San Antonio Tex., of counsel.

Ted Butler, U. S. Atty., Reese L. Harrison, Asst. U. S. Atty., Ernest Morgan, Special Asst. U. S. Atty., San Antonio, Tex., for respondents-appellees.

Before GEWIN, THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Floyd Featherston, while in federal custody and subject to the District Judge's order committing him for psychiatric observation to the federal hospital in Springfield, Missouri, petitioned the same District Judge for a writ of habeas corpus on the ground that he was being detained in violation of his federal constitutional right not to be placed twice in jeopardy for the same offense. 28 U.S.C. § 2241(c) (3) (1964); *see* U.S.Const. amend. V.

The United States charged Featherston with having knowingly and wilfully attempted to evade and defeat part of the income tax due and owing from him and his wife for the taxable years 1961, 1962, and 1963, in violation of Int.Rev. Code of 1954, § 7201, by filing a false and fraudulent income tax return for each of those years. A jury trial on this charge began on September 17, 1968, in Del Rio, Texas. On October 8, 1968, the District Judge ordered Featherston's commitment for psychiatric observation to the Springfield hospital, *see* 18 U.S.C. § 4244 (1964), discharged the jury, and declared a mistrial. Featherston contends that no legal basis exists for his present detention because the declaration of a mistrial operates to bar the Government from commencing a new trial on the tax evasion charge. Finding this contention unsound, we affirm the District Court's order denying Featherston's petition. 28 U.S.C. § 2241(c) (1964).

The purpose of the constitutional prohibition against "double jeopardy," applicable to the federal government and the states, is to prevent these governments from making repeated attempts to convict an individual of an alleged offense, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U. S. 184, 187–188, 78 S.Ct. 221, 223, 2 L. Ed.2d 199 (1957). *See also* Benton v. Maryland, 395 U.S. 784, 795–796, 89 S. Ct. 2056, 2063, 23 L.Ed.2d 707 (1969); United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896). Occasions will arise, however, when a second trial constitutionally may be had on the same charge against a defendant notwithstanding that the jury impaneled for the first trial was discharged without reaching a verdict and over the defendant's objection. *E. g.*, United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). Federal district judges are empowered to declare mistrials in criminal cases without causing a subsequent trial to be barred "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *Id.*; see Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963). Exercising the discretion of declaring a mistrial does not bar a second trial if there is an "imperious necessity" for so doing, Downum v. United States, supra. Such a need will arise "only in very extraordinary and striking circumstances," United States v. Coolidge, 25 Fed.Cas. 622, 623 (No. 14,858) (C.C.D.Mass.1815), and each case will turn upon its own

particular facts. Downum v. United States, 372 U.S. 734, 737, 83 S.Ct. 1033, 1035 (1963). Mindful of the Supreme Court's admonition that any doubt should be resolved in favor of the liberty of the individual, in order to prevent the exercise of "an unlimited, uncertain, and arbitrary judicial discretion," *id.* at 738, 83 S.Ct. at 1035–1036, *quoting* United States v. Watson, 28 Fed.Cas. 499, 501 (No. 16,651) (D.C.N.Y.1868), we have no doubt that a mistrial was manifestly necessary in this case to protect the rights of the accused and, by so doing, to serve the ends of public justice. United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). We have considered and rejected Featherston's arguments on this appeal as follows.

A mistrial was declared in this case because the District Judge determined that Featherston's commitment for psychiatric observation was necessary to the determination he had ordered of Featherston's mental competency to stand trial. Featherston contends that the District Judge erred in ordering such a determination of his competency. The record of the trial refutes this contention, for it shows that a serious question regarding the defendant's mental competency was raised in open court during the fourth week of that proceeding. Consequently, in making this order the District Judge was merely complying with the mandate of 18 U.S.C. § 4244 (1964). Section 4244 provides in part:

"Whenever after arrest and prior to the imposition of sentence * * * the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused * * * to be examined as to his mental condition * * * ."

In this case the United States Attorney made an oral motion for a section 4244 determination. Therefore, the District Judge was required to order such a determination unless the motion was made in bad faith or was based upon a frivolous ground. Caster v. United States, 5 Cir., 1963, 319 F.2d 850, 852, cert. denied, 376 U.S. 953, 84 S.Ct. 972, 11 L. Ed.2d 973 (1964). *See also* Krupnick v. United States, 8 Cir., 1959, 264 F.2d 213, 216. That Featherston might have been competent to stand trial is irrelevant to the question whether a determination of this fact was necessary.

■ The test of mental competency under section 4244 is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U. S. 402, 80 S.Ct. 788, 789, 4 L.Ed. 2d 824 (1960); Blake v. United States, 5 Cir., 1969, 407 F.2d 908, 910 (en banc). Once the United States Attorney has reasonable cause to believe that the accused does not possess this ability and understanding, he must move for a determination according to the terms of section 4244, and the trial court must grant the motion. We agree with Featherston that the relevant inquiry under this section is not whether a defendant can be held criminally responsible for the acts with which he is charged, *see* Blake v. United States, 5 Cir., 1969, 407 F.2d 908 (en banc), but whether he understands the nature of the proceedings against him and is able to assist in his own defense. *See* Shale v. United States, 5 Cir., 1968, 388 F.2d 616, 618, cert. denied, 393 U.S. 867, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968); Floyd v. United States, 5 Cir., 1966, 365 F.2d 368, 374 n. 9. We cannot accept Featherston's contention, however, that no

question regarding his competency was raised during the course of his trial.

The trial had progressed into its fourth week and the Government had presented its case when Featherston's counsel called Dr. George H. Hermann, the defendant's physician, as a witness for the defense. Hermann testified in the absence of the jury following a conference in chambers between counsel and the Court as to the purpose of the medical witness' appearance. Through his testimony the physical and mental condition of Featherston from 1959 or 1960 until the present was developed, ostensibly for the defensive purpose of explaining Featherston's failure to take the witness stand. This testimony has been well summarized by the District Court: It developed that Featherston, a diabetic, suffered from "blackouts." What was meant by this term were

" * * * periods of from 48 to 72 hours in which [Featherston] would transact business and behave normally, but during which he would not be fully aware of what he was doing or where he was, and about which he would remember nothing afterward. These periods would come and go with no outward warning, and can not be detected by even a physician, without chemical tests, unless in its most chronic stages when the subject is near a coma or semi-conscious. This condition may or may not have existed on each day of the trial."

Featherston v. Clark, et al., 293 F. Supp. 508, W.D.Tex., 1968. Thus Featherston's own witness raised the issue of the defendant's present competency to stand trial. Any argument that the section 4244 motion made in this case was either frivolous or in bad faith is, therefore, without merit.

Featherston next argues, assuming the necessity of a judicial determination of his mental competency according to the provisions of section 4244, that the District Judge abused his discretion, or failed to exercise his discretion, by ordering that the defendant be committed to the hospital in Springfield. Section 4244 provides in this regard that

" * * * [T]he court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. * * * "

Since this provision vests in the trial court discretion to determine where and by whom an accused will be examined and whether commitment for this purpose is necessary, Featherston contends that the District Judge, by apparently adhering to a policy of uniformly remanding to Springfield all defendants ordered for psychiatric observation, failed meaningfully to exercise proper discretion in this case. Instead, Featherston argues, the District Judge should have considered the use of a local psychiatrist as an alternative to commitment to Springfield. Had the Judge considered this alternative, the defendant concludes, his choice of Springfield would have been unreasonable in light of the circumstances of this case.

The record refutes Featherston's argument. Use of a "local" psychiatrist was not a meaningful alternative, since the District Judge determined, and Featherston does not dispute, that there were then no "qualified psychiatrists" in or around Del Rio, where the trial was conducted. The nearest place to which Featherston could have gone for the quality examination to which he was entitled was San Antonio, Texas, approximately 150 miles from Del Rio. The District Judge was unfamiliar with San Antonio and would have required the assistance and advice of government officials there to obtain the services of a psychiatrist. We cannot say that the District Judge abused his discretion by not arranging for the services of a San

Antonio psychiatrist, whether in San Antonio or in Del Rio. Moreover, in view of the particular nature of Featherston's condition, we believe that the District Judge was fully justified in ordering commitment to Springfield, where Featherston could be thoroughly examined by doctors familiar with the *Dusky* standard of mental competency. *See* Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 789 (1960).

Featherston's condition is apparently such that even a physician cannot discern by merely observing the defendant whether he is suffering one of his "blackout" spells. Instead, a contemporaneous blood test and examination as well as observation are required for a determination of whether Featherston is or is not suffering a spell on a given day. Dr. Hermann testified that Featherston would not be fully aware of what he was doing during the course of one of these spells. It is obvious that if Featherston suffered such a spell on one or more days of the trial, he might not have been able at that time to consult with his attorney with a reasonable degree of rational understanding or to have a rational understanding of the proceedings against him. A determination on the day when the issue of Featherston's mental competency was first raised that the defendant was not then suffering a blackout would not have settled the question whether he had been so afflicted on the previous days of the trial. Clearly, a thorough examination of Featherston was required for the purpose of determining whether his mental impairment, if any, during the course of a blackout made him mentally incompetent by the *Dusky* standard.

The testimony of Dr. Hermann raised a serious question respecting the defendant's ability to understand the nature of the proceedings against him and to assist in his own defense on every day of the trial. Because such a question was raised, we conclude under the circumstances here that the trial could not have progressed no matter how or where the subsequent psychiatric examination required by section 4244 was made. Underlying section 4244 is the well-established principle in our jurisprudence that public justice is not served by trial of an individual for an alleged offense when that individual is mentally unable reasonably to comprehend the action being taken against him or to assist in the defense of his liberty. Protection of Featherston's right not to be so tried, notwithstanding the protestations of his lawyers, made imperative a mistrial in this case. Declaration of that mistrial will not bar further action against Featherston when and if he is determined to be mentally competent to stand trial.

Affirmed.