In re John David
**NEWCHURCH, Petitioner.**

No. 86–3633.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1986.

James E. Boren, Anthony M. Bertucci, Baton Rouge, La., for appellant.

Keith B. Nordyke, Baton Rouge, La., for amicus—National Assoc. Crim. Lwyrs.

Rebecca Hudsmith, Shreveport, La., for amicus—La. Assoc. Crim. Lwyrs.

Joyce Hebert, U.S. Marshal's Office, Baton Rouge, La., for other interested party —U.S. Marshal.

Ezra H. Friedman, U.S. Dept. of Justice, Washington, D.C., Ian F. Hipwell, Asst. U.S. Atty., Frank J. Polozola, U.S. Dist. Judge, Baton Rouge, La., for appellee.

Appeal from the United States District Court for the Middle District of Louisiana.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is whether a defendant in a criminal case who, pursuant to Federal Rule of Criminal Procedure 12.2(a), notifies the government that he plans to plead that, although now mentally competent, he was insane at the time of the charged offense, may be committed to a federal penal institution for a mental examination without a finding that such commitment is necessary in order to enable the government properly to prepare for trial.

## I.

John David Newchurch was indicted for conspiring to attempt to commit arson of three abortion clinics in Baton Rouge, Louisiana, the River City Women's Clinic, the Delta Women's Clinic, and the Acadian Women's Clinic, in violation of 18 U.S.C. §§ 371 and 844(i) (1982), and for maliciously damaging and attempting to destroy by fire the Delta Women's Clinic in violation of 18 U.S.C. §§ 2 and 844(i) (1982). Newchurch was released on a $5,000 unsecured bond. He entered a plea of not guilty and was enlarged under the unsecured bond. He later filed notice of his intention to rely on the defense of insanity at the time of the charged offense and of his intention to introduce expert testimony relating to his mental condition at that time.[1]

The government then filed what it labeled an *Ex Parte* Motion for Pretrial Psychiatric Examination," attaching a proposed order committing Newchurch "to the custody of the Attorney General of the United States for placement in a suitable

---

1. Fed.R.Crim.P. 12.2(a), (b).

facility" for the examination. The district court did not grant the ex parte motion but ordered Newchurch to file a response within ten days. Newchurch then filed an objection to what he styled his proposed incarceration. He also requested the government to "set forth available alternatives locally," to establish a plan protecting his fifth, sixth and fourteenth amendment rights, and to demonstrate that it was acting in good faith. He asked for an evidentiary hearing and urged that the government be required to demonstrate that his examination was necessary.

After hearing oral argument but no testimony, the district judge ordered that Newchurch be committed to the custody of the Attorney General for examination and that "a psychiatric report and a psychological report (as deemed necessary by an authorized representative of the Attorney General) be filed with the Court in accordance with 18 U.S.C. § 4247(c), rendering an opinion as to whether John David Newchurch was insane at the time of the offense charged." The assistant United States attorney advised Newchurch that he would be committed to the United States Medical Center for Federal Prisoners at Springfield, Missouri.

Newchurch then sought modification of the court order and the court scheduled an evidentiary hearing. At the hearing, Newchurch introduced photocopies of pages from the Baton Rouge telephone directory listing a number of psychologists and psychiatrists; his counsel's affidavit setting forth his own experience with the utilization of local Baton Rouge psychiatrists and psychologists and declaring that a "chilling effect" will exist in this case and others if he and other attorneys must advise clients that in order to maintain an insanity defense they must "first go to prison for 30 to 45 days;" and the affidavits of two local psychologists, both of whom expressed the opinion that the incarceration of individuals for psychiatric examination may lead to inaccurate results. The affidavit of one of the doctors, a clinical psychologist who had been appointed by the federal district court as an expert witness in another case, states

that he has been an expert witness on the mental condition of defendants in at least ten cases in state and federal courts and that there are at least twenty psychologists in Baton Rouge who are competent and available to serve as experts in examining a defendant to determine his mental condition. The affidavit of the other doctor states that he has served as chief psychologist of the Louisiana Department of Corrections, has conducted thousands of psychological examinations, and that he could perform the type of examination needed for Newchurch on an outpatient basis within fourteen days. Newchurch also filed an affidavit from a state court judge stating that he has presided over many trials in which the defense of insanity was an issue and has received what he deemed accurate and complete reports on the defendants' mental condition from local doctors. Counsel for Newchurch stated to the court that Newchurch had been offered employment but obviously would not be able to work if required to report to Springfield.

During the hearing, the district court stated that it had in the past received reports from Springfield that were extensive and exhaustive, it did not consider that facility to be a prison, and "when somebody has a defense that's as important as this, he ought to go to the facilities that the Congress has set up in order to conduct these very examinations." The court expressed the opinion that people who are sent to Springfield for evaluation are not held incommunicado, have access to their lawyers, telephones and the mails, and are allowed recreation and visitation privileges. The court stated that it believed "the Bureau of Prisons can do me a better job, not because Dr. Silva [one of the local doctors who performs psychiatric evaluations] is incompetent, but the program set-up ... it is cost efficient ... and that is one of the things that I have to resolve and worry about." The court also stated that it did not think that Newchurch was likely to flee or pose a danger to the community or "he wouldn't be out on bond." It therefore reaffirmed its order committing New-

church to the custody of the Attorney General. Newchurch sought a writ of mandamus to compel the district court to vacate this order, conceding that he must submit to an examination but urging that the government had not demonstrated sufficient reason to require his commitment to a government institution distant from his home.

Before oral argument of the application for a writ, this court directed specific questions to counsel for the government requesting that the replies reflect the official position of the Department of Justice. Counsel for the Department stated in response to those questions that, if Newchurch is committed to the custody of the Attorney General for an examination, he will be sent or ordered to report to the United States Medical Center for Federal Prisoners at Springfield, Missouri. At least 40% of the persons committed to this institution for determination of their mental condition at the time of an alleged offense are detained more than forty-five days. The conditions of confinement of such an unconvicted person are "essentially the same" as those imposed on persons who have been convicted of a crime and then committed to that institution for a mental examination, except that unconvicted persons may consult more freely with counsel, may receive more frequent visits from their family, and are not required to work. The same facility is used for examinations to determine mental competency to stand trial, mental condition of convicted persons, and mental condition of a competent, unconvicted defendant who asserts his insanity at the time of the alleged offense.

The distance by road from Baton Rouge, Louisiana, to Springfield, Missouri is 590 miles. Driving time, according to the Rand McNally Road Atlas, is thirteen hours, forty-five minutes.

## II.

The eighth amendment, made applicable to the states by the fourteenth amendment, prohibits excessive bail, while the fourteenth amendment itself protects every person from the deprivation of his liberty without due process of law. "This traditional right to freedom before conviction [safeguarded by the eighth amendment prohibition of excessive bail]" the Supreme Court declared in *Stack v. Boyle*, "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." [2] "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." [3] The due process clause essentially guarantees that the government will not imprison or otherwise physically restrain a person except in accordance with fair procedures.[4] The Court held unanimously, in *Addington v. Texas*,[5] for example, that even a preponderance of the evidence will not support the involuntary commitment of an adult, not charged with crime, to a psychiatric institution; instead, the need for such commitment must be shown by clear and convincing evidence.

Due process also requires the government, when it deprives an individual of liberty, to fetter his freedom in the least restrictive manner. Even when a governmental purpose is legitimate and substantial, " 'that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' " [6] A person accused of a crime should not therefore be deprived of personal liberty unless his confinement is reasonably necessary to assure his pres-

2. 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951).

3. *Id.*

4. J. Nowak, R. Rotunda, and J. Young, Constitutional Law § 13.4, at 459 (3d ed. 1986).

5. 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

6. *Aptheker v. Secretary of State*, 378 U.S. 500, 508, 84 S.Ct. 1659, 1665, 12 L.Ed.2d 992 (1964) (quoting *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960)).

ence at trial[7] or to protect some other important governmental interest.

While the issues before us turn on interpretation of the Insanity Defense Reform Act of 1984,[8] and a companion statute enacted at the same time, the Bail Reform Act of 1984,[9] both of which were part of the Comprehensive Crime Control Act of 1984,[10] and the rules of the Federal Code of Criminal Procedure, these provisions must be read against the background of the constitutional protection for individual liberty.[11]

### III.

Federal Rule of Criminal Procedure 12.-2(b) requires a defendant who intends "to introduce expert testimony relating to a mental disease or defect or any other mental condition ... bearing upon the issue of his guilt" to notify the attorney for the government of his intention in writing and to file a copy of the notice with the clerk of court. The Rule provides that "[i]n an appropriate case the court may, on motion of the attorney for the government, order the defendant to submit to an examination pursuant to 18 U.S.C. § 4242." [12]

Under prior law, a defendant was required to notify the court if he intended to rely on insanity as a defense[13] and the court might require him to submit to an examination by its own expert.[14] While courts had no statutory authority to commit defendants to custody for such examinations, they required evaluations of insanity at the time of the offense and committed defendants under 18 U.S.C. § 4244 (1982) for evaluations of competency to stand trial,[15] invoking their "inherent power." The government had the burden of proving beyond a reasonable doubt that the defendant was sane at the time he committed the act charged.[16] If the jury believed that the government had not proved the defendant's sanity, it was required to acquit him, for federal law did not permit a verdict of not guilty by reason of insanity.[17] The Federal Rules of Evidence allowed experts to give their opinion on whether the defendant was mentally competent at the time of the alleged offense.[18]

The 1984 Act changed these rules. Insanity was made an affirmative defense and the burden of proof was placed on the defendant.[19] The court was given the power not only to order an examination of the defendant but to commit him to the custody of the Attorney General for that purpose.[20] The Rules of Evidence were amended to render inadmissible expert testimony "as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto," for "[s]uch ultimate is-

7. *Pugh v. Rainwater,* 572 F.2d 1053, 1057 (5th Cir.1978) (en banc).

8. 18 U.S.C. §§ 20, 4241–47 (Supp.III 1985).

9. 18 U.S.C. §§ 3141–56 (Supp.III 1985).

10. Pub.L. 98–473, Title II, § 406, Oct. 12, 1984, 98 Stat. 2067.

11. Cf., *United States v. Thier,* 801 F.2d 1463, 1466–68 (5th Cir.1986); *United States v. Salerno,* 794 F.2d 64, 71–75 (2d Cir.1986), *cert. granted,* — U.S. —, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986).

12. Fed.R.Crim.P. 12.2(c).

13. 1 C. Wright, Federal Practice and Procedure § 206, at 749 (1982).

14. *Id.* § 207, at 751.

15. *United States v. Reifsteck,* 535 F.2d 1030, 1033 (8th Cir.1976); *United States v. Moudy,* 462 F.2d 694, 697 (5th Cir.1972).

16. *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *United States v. McCracken,* 488 F.2d 406, 409 (5th Cir.1974); S.Rep. No. 225, 98th Cong., 2d Sess. 224, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3406.

17. S.Rep. No. 225, 98th Cong., 2d Sess. 238, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3420.

18. *Id.* at 225, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3407.

19. 18 U.S.C. § 20 (Supp.III 1985).

20. 18 U.S.C. § 4247(b) (Supp.III 1985).

sues are matters for the trier of fact alone." [21]

■ 18 U.S.C. § 4242, which was amended as part of the Insanity Defense Reform Act of 1984, provides that, upon the filing of a notice "that the defendant intends to rely on the defense of insanity, the court, upon motion of the attorney for the Government, *shall* order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." (Emphasis added.) Section 4247(b) provides that, for the purposes of an examination pursuant to an order under § 4242, "the court *may* commit the person to be examined for a reasonable period, but not to exceed thirty days ... to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination *shall* be conducted in the suitable facility closest to the court." (Emphasis added). The director of the facility may apply for a reasonable extension not to exceed thirty days "upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant."

Read in context, the statutory language commands the district court to order an examination but permits it either to commit the defendant to the custody of the Attorney General for that purpose or to order that the examination be made in some other manner. That the use of the permissive word "may" as to the manner of the examination was deliberate as compared to the use of the mandatory word, "shall," in directing that an examination of some kind be made, is indicated by the Report of the Senate Committee on the Judiciary. This Report states: "For purpose of the exami-

nation, the court is empowered to commit the defendant ... to the custody of the Attorney General.... If, however, the court believes that the defendant's examination can be conducted on an outpatient basis, there need not be a commitment under this provision." [22]

This interpretation is consistent with the interpretation placed on a similar requirement of the District of Columbia Code by the District of Columbia Circuit Court of Appeals in *Marcey v. Harris*.[23] That case involved a commitment to a hospital in the District of Columbia to determine a defendant's competence to stand trial. The court held that, "if a defendant [enlarged on bail] so requests, his commitment shall be limited to examination on an outpatient basis. However, inpatient commitment shall be ordered if the court is advised by a report of the hospital authorities, setting forth reasonable grounds, that such inpatient commitment is necessary to assure an effective examination." [24]

■ The government offered no evidence that the commitment of Newchurch to the custody of the Attorney General is necessary or that an examination adequate for determination of his sanity at the time of the alleged offenses cannot be conducted on an outpatient basis or by a confinement of short duration in a hospital near the place of trial.[25] It offers no evidence concerning whether any distinction should be made between persons whose present competency is an issue and those who plead insanity at some earlier time in determining the need for commitment,[26] but simply takes the position that the difference is immaterial. In the absence of some evidence that commitment is necessary, a district court should not exact such a deprivation of liberty.

21. Fed.R.Evid. 704(b).

22. S.Rep. No. 225, 98th Cong., 2d Sess. 235, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3417.

23. 400 F.2d 772 (D.C.Cir.1968) (per curiam).

24. *Id.* at 774.

25. *Cf. United States v. Varner,* 467 F.2d 659, 661 (5th Cir.1972) (per curiam); *Featherston v. Mitchell,* 418 F.2d 582, 585 (5th Cir.1969), *cert. denied,* 397 U.S. 937, 90 S.Ct. 945, 25 L.Ed.2d 117 (1970).

26. *Featherston,* 418 F.2d at 584.

■ The government urges that the decision to commit should be for the district court's sole discretion, stating that "to suggest that the trial court should not be interested in determining the viability of an insanity defense placed before it is ridiculous." This argument is not well considered. Unlike the question of competence to stand trial, the defendant's sanity at the time of the offense is a question for the jury.[27] While, as with other defense theories, defendants are not entitled to a jury instruction on the issue of insanity if there is no evidence to support it,[28] the sufficiency of the evidence to support such a plea is different from the issue posed by this case: the existence of possibly contrary evidence based on the opinion of the government's experts.

A defendant who is convicted and sentenced and is suffering from mental disease is committed to the custody of the Attorney General. The terms of the commitment, although not its duration, are exactly the same when the defendant, innocent in the eyes of the law, is put into the custody of his accuser for an evaluation of his sanity at the time of the offense with which he is charged.

The district court's order will in fact require the confinement of Newchurch for forty-five days or more in an institution 600 miles from both his home and the place of trial. It is virtually impossible for a Baton Rouge resident confined in Missouri to consult with counsel and adequately to prepare for trial. The deprivation of his liberty will also mean forfeiture of employment and render the promise of family visits illusory. The statute does not require a defendant to undergo such a confinement as the price of entering a plea of insanity, so we express no opinion concerning whether Congress might constitutionally do so.

■ Congress has decided that the government is entitled both to notice that a defendant will admit that he committed an unlawful act but seek to escape criminal consequences by pleading his insanity at the time and to a fair opportunity to have experts examine him in order to contest his plea. This demands only a reasonable opportunity to make such an examination and a fair chance to rebut the defense. Incarceration for a month and a half or more should not be imposed unless it is demonstrably necessary.

Read together, the provision that the court "may" commit a person to the custody of the Attorney General, the legislative statement that commitment should not be ordered if the examination can be conducted on an outpatient basis, and the provision that, if the defendant is committed, he shall be examined in the nearest suitable facility, all require that, before committing a defendant, the court determine, on the basis of evidence submitted by the government, subject to cross examination, and to rebuttal by the defendant, that the government cannot adequately prepare for trial on the insanity issue by having the defendant examined as an outpatient.

■ The evidence should explain the difference, if any, in the conditions required for an adequate examination of present mental condition and those that might be appropriate for examination of a person whose present competency is not at issue but who asserts his insanity at some earlier time. In making its determination, the district court should consider the purpose of the examination, the availability and competency of experts in the vicinity of the court, and the fact that the question of competency to stand trial is for the court, while the issue of insanity at the time of the offense is for the trier of fact, to be determined on the same basis as its evaluation of all other evidence. The district court should not undertake to evaluate the quality of outpatient examination as op-

---

**27.** *United States v. Lyons,* 704 F.2d 743, 747 n. 1 (5th Cir.1983), *cert. denied,* 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984); *United States v. Kossa,* 562 F.2d 959, 960 (5th Cir.1977), *cert. denied,* 434 U.S. 1075, 98 S.Ct. 1265, 55 L.Ed.2d 781 (1978). *See also United States v. Johnson,* 718 F.2d 1317, 1321–22 (5th Cir.1983) (en banc).

**28.** *Sullivan v. Blackburn,* 804 F.2d 885, 887, (5th Cir.1986).

posed to an examination conducted in the custody of the Attorney General solely on its personal past experience, for that experience is neither a matter of record, a subject for cross examination, nor a question susceptible to review on appeal. The expense of local examination compared to the cost of commitment to a government institution is not a controlling consideration.

 Having conducted such an evidentiary hearing, the district court should make findings of fact concerning the need for commitment to the custody of the Attorney General. Those findings of fact are to be accepted by us unless clearly erroneous for, although Federal Rule of Civil Procedure 52(a) does not apply in terms to criminal cases, that same standard is applicable.[29] An appellate court should give appropriate deference not only to these findings but also to the conclusion reached by the district court. That conclusion is, however, to be reached in the sound exercise of judgment founded on the facts.

 We therefore vacate the order committing Newchurch to the custody of the Attorney General. The district court should hold an evidentiary hearing to decide the conditions of the government's psychiatric evaluation of Newchurch under 18 U.S.C. §§ 4242 and 4247 in accordance with this opinion. We do not issue the writ of mandamus because we are confident that the district court will do so.

---

**29.** *United States v. Thompson,* 720 F.2d 385, 386 (5th Cir.1983) (per curiam); *United States v.* *Passmore,* 671 F.2d 915, 917 (5th Cir.1982).