**UNITED STATES of America,**

v.

**Israel GOMEZ–BORGES, Defendants.**

**No. CR. 99–100(DRD).**

United States District Court,
D. Puerto Rico.

March 29, 2000.

Antonio R. Bazan–Gonzalez, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for plaintiff.

Joseph C. Laws, Federal Public Defender Office, San Juan, PR, for defendant.

Juan F. Matos–De–Juan, Federal Public Defender Office, San Juan, PR, for defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

On the eve of trial defendant, Israel Gómez–Borges, has filed two motions. First, a sealed motion was filed informing on defendant's apparent inability to assist counsel Juan Matos de Juan, (Docket No. 31), which was ordered by the court unsealed and a hearing was held on January 18, 2000. At the hearing Forensic Psychiatrist Cynthia Casanova Pelosi opined that although the defendant may have in the recent days not been able to assist counsel, he was now fully capacitated to assist counsel. Hence, the inability to assist counsel matter was denied by the court because the argument at the end lacked proof to substantiate the allegation.

The second motion was announced on January 18, 2000, this time a motion under Fed.R.Cri.Pr. 12.2.(b) was filed as to the mental capacity bearing upon the issue of guilt. Hence, defendant advanced that he was to seek expert opinion testimony as to insanity at the date of the alleged offense. A hearing was then originally scheduled for February 21, 2000, as to mental competency. The hearing was actually held on February 22 and 23, 2000. The court at the end of the hearing requested the United States to file a motion informing as to time frames of the mental evaluation sought by the United States under 18 U.S.C. §§ 4242, 4247(b), under the alternatives as to in patient as well as outpatient basis. The United States complied on February 25, 2000. The court is now ready to rule.

Defendant is charged with possession with intent to distribute approximately two thousand two hundred and forty grams of methamphetamine, a schedule I Narcotic Drug Controlled Substance in violation of 21 U.S.C. § 841(a)(1). The discovery of the controlled substance was made by the U.S. Customs Service, Department of the Treasury, at San Juan International Airport, P.R. on a secondary inspection performed upon arrival of the defendant to the United States from Madrid, Spain [1], on an Iberia Airlines flight.

Defendant was granted bail by the U.S. Magistrate Judge on April 7, 1999, (Docket No. 7). The conditions of release were subsequently amended authorizing the defendant to travel and reside in Miami, Florida, where he was gainfully employed. The grandmother residing in Miami became an additional third party custodian. The modifications of the conditions of release were not objected to by the United States. (See Docket No. 11 and Marginal Order issued by Magistrate Judge Delgado on 4–27–99.) There is no record whatsoever of any noncompliance by defendant as to the conditions of release.

The United States has requested pursuant to 18 U.S.C. § 4242 et sec. to be able to verify the mental capacity of the defendant and requests that he be institutionalized. Defendant vehemently objects, balking particularly at losing his bail condition merely because an insanity defense is raised.

The court must interpret the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 20, 4241–47, and the Bail Reform Act of 1984, 18 U.S.C. § 3141–56, both of which were part of the Comprehensive Crime Control Act of 1984.[2] Further, Federal Rule of Criminal Procedure 12.2(b) provides that "[i]n an appropriate case the court may, on motion by the attorney for the government, order the defendant to an examination pursuant to 18 U.S.C. § 4242."

The issue at hand in its narrowest expression is whether or not defendant Israel Gómez–Borges is to lose his condition of release because he is to be mentally examined by the United States. Pursuant to the case of *In Re: Newchurch*, 807 F.2d 404, 408 (5th Cir.1986), the matter has due

---

**1.** Defendant's travel originated from the Netherlands.

**2.** Pub.L. 98–473, Title II § 406, Art. 12, 1984, 98 Stat.2067.

process ramification because "the need for such commitment must be shown by clear and convincing evidence." [3]

Section 4247(b) states that for the purposes of an examination pursuant to a request made by the government for an order to examine the mental condition of a defendant under § 4242, "the court may commit the person to be examined for a reasonable period, but not to exceed thirty days ... to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological evaluation shall be conducted in the suitable facility closest to the court." Further, the head of the mental facility may request a reasonable extension not to exceed thirty days "upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant."

The court in *Newchurch, Id.*, determined that although the mental examination is to be commanded, the commitment of the defendant to custody by the court is not necessarily mandatory but discretionary:

"Read in context the statutory language commands the district court to order an examination but permits it either to commit the defendant to the custody of the Attorney General for the purpose or to order that the examination be made in some other manner. That the use of the permissive word "may" as to the manner of the examination was deliberate as compared to the mandatory word "shall" in directing that an examination of some kind be made is indicated by the Report of the Senate Committee on the Judiciary. This report states "for the

purpose of the examination, the court is empowered to commit the defendant ... to the custody of the Attorney General ... If, however, the court believes that the defendant's examination can be conducted on an outpatient basis, there need not be a commitment under this provision." [4]

The court in *Newchurch* then asked whether or not it was "necessary" to commit the defendant and whether or not the examination "cannot be conducted" on an outpatient basis or by a confinement of short duration in a hospital near the place of trial." The appeals court then concluded that "In the absence of some evidence that commitment is necessary, a district court should not exact such a deprivation of liberty." *In re Newchurch, Id.* Further, the court stated that the "forfeiture of employment and render[ing] the promise of family visits illusory" were also significant factors to be weighed in determining commitment. Finally, "incarceration for a month and a half or more should not be imposed unless it is demonstrably necessary." *In Re: Newchurch,* 807 F.2d at 411.

Notwithstanding, the appellate court acknowledges that detention is permissible if it "is reasonably necessary to assure [the defendant's] presence at trial or to protect some other important governmental interest." *In Re: Newchurch,* 807 F.2d at 408–409. (Footnote omitted.) [5]

Interpreting *Newchurch,* another appellate court has suggested the district court to examine objective criteria. *United States v. Deters,* 143 F.3d 577, 583–584 (10th Cir.1998).

**3.** The Fifth Circuit Court of Appeals cites as authority for the due process repercussion the case of *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) and the treatise of Nowak, R. Rotunda and J. Young, Constitutional Law, § 13.4 at 459 (3rd Ed.1986).

**4.** S.Rep. No. 225, 98th Congress, 2nd Sess. 235, reprinted in 1984 U.S.Code Cong. & Ad.News 3417.

**5.** The *Newchurch* court noticed the argument made by defendant of the potential "chilling effect" that may be caused by institutionalizing a defendant free on bail for merely filing an otherwise valid insanity defense. *In Re Newchurch,* 807 F.2d at 404.

The appellate court in *Deters* reiterates the conclusion of the *Newchurch* court that the detainment of a defendant for a mental evaluation involves "heightened substantive due process scrutiny" requiring "compelling governmental interest to justify such action." *United States v. Deters*, 143 F.3d at 583 citing *Reno v. Flores*, 507 U.S. 292, 316, 113 S.Ct. 1439, 1454, 123 L.Ed.2d 1 (1993) (O'Connor J. concurring).

*Deters* suggest[6] that the district court should examine if the mental condition of the defendant evaluated on an outpatient basis poses an aggravated "risk" that defendant would fail to appear at trial. *United States v. Deters*, 143 F.3d at 583–84. The district court is to further inquire if the defendant is currently demonstrating "unstable living conditions" and/or whether the defendant has "missed" any appearance in court. *United States v. Deters, id.* Finally, *Deters* suggests that the "timing" of the requested psychiatric evaluations be scrutinized for speedy trial evaluation under the Sixth Amendment following the case of *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972).

The court must factually conclude that there is no record whatsoever nor did the government attempt to prove that defendant has failed to comply with any of the imposed conditions of release while defendant was residing in Puerto Rico or in Florida. Further, he has not failed in any court appearance and he seems to have a stable employment in this jurisdiction even though he recently moved back to Puerto Rico. There is no manifest record of "unstable living conditions" as to the defendant. Since the potentially institutionalized mental evaluation of the defendant is to be made somewhere in Continental United States, as in the case of *Deters*, the codefendant will most probably lose his employment and family visits seem to be "illusory."

The court thoroughly examined psychiatrist Cynthia Casanova as to the potential repercussion that could be caused by defendant's bipolar type II condition as to danger to the community and/or as to risk of flight, elements to be considered under the Bail Reform Act, 18 U.S.C. § 3142(g). "Mood swings, oscillating between periods of expansiveness and depressions were noted" by the psychiatrist in the report.[7] Further, as part of defendant's mental condition hypomania was diagnosed. "Hypomania is the mildest form of manic phase ... when not controlled a hypomania episode may lead to an *acute mania*. During an acute mania phase there is marked flight of ideas, circumstantial speech and incoherent and illogical thinking."[8]

The court expressed serious concern that in acute mania phase the codefendant could potential be "dangerous" to the community and/or become a flight of "risk." Dr. C. Casanova Pelosi insisted, however, that the bipolar disorder of the codefendant was controlled because he was regularly in disciplined fashion taking adequate medication, lithium. "Mr. Israel Gómez Borges is cognizant of his mental condition and able and motivated to seek and comply with treatment offered."[9] Since the testimony of Dr. C. Casanova was the only testimony received and sounded reasonable, the court must conclude as concluded by the expert. Therefore, the alleged potential past mental condition of the defendant does not aggravate a risk of flight nor increment a potential danger to the community because the defendant is currently stable and recurrence is deemed remote.

---

6. The court in *United States v. Deters*, 143 F.3d at 584, as well as the court in *In re Newchurch*, 807 F.2d at 412, openly suggest the "district court [to] make findings of fact concerning the need for commitment." The court heeds the advise.

7. Psychiatric Report prepared by Ms C. Casanova Pelosi, p. 15.

8. *Id.* at 16.

9. *Id.* at 17.

The timing of the two mental condition motions filed by the defense on the eve of trial has not been the best. Further, said motions were filed after the court had granted at defendant's request several extensions to attempt to reach a plea (see Dockets No. 14, 15, 16). Notwithstanding, the timeliness as to the motion filed by the defendant as to inability to assist counsel can be reasonably explained by the particular circumstance of his case, that is, defendant was residing in Miami, Florida, and consequently counsel in Puerto Rico could not detect his lack of assistance until he began to prepare for trial here in Puerto Rico.

The filing also on the eve of trial of the mental incapacity defense to be examined under the Sixth Amendment is undoubtedly a negative criteria affecting the resolution unfavorably to defendant of the matter at hand.[10] Notwithstanding, all other factors to be considered favor that the mental evaluation be performed in an outpatient basis. The court having examined all required factors cannot conclude that incarceration for a month and a half or more of defendant should be imposed because the record does not justify that "it is demonstrably necessary," *In re Newchurch*, 807 F.2d at 411. Further, the record is devoid of "sufficiently compelling governmental interest." *United States v. Deters*, 143 F.3d at 583.

**WHEREFORE,** the psychiatric medical evaluation of defendant Israel Gómez Borges is **ORDERED** pursuant to 18 U.S.C. 4242. The evaluation shall be performed in an outpatient basis. *In re Newchurch*, 807 F.2d at 410. The United States is **GRANTED twenty (20) days** to select the physician who is to perform the evaluation. Thereafter, the defendant shall be evaluated within the time frame granted under The Insanity Defense Reform Act of 1984, 18 U.S.C. 4242 ("The statutory scheme allows confinement of up to seventy-five days for a section 4242 evaluation— forty-five days plus a possible thirty day extension—..." *United States v. Deters*, 143 F.3d at 582). The time granted to the United States to select the psychiatrist as well as the time required to perform the mental evaluation is to be excluded from the Speedy Trial computations by express statutory mandate. 18 U.S.C. 3161(h)(1)(A). The United States is to inform the court when the evaluation have been terminated enabling the court to set the trial date.

IT IS SO ORDERED.

---

10. The mental incapacity defense was filed almost eight months after arraignment date of 4–21–99 (Docket No. 12) (date of notice of the defense was 1–18–2000). Defendant is reminded that post accusation delay is "presumptively prejudicial ... as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *United States v. Muñoz–Amado*, 182 F.3d 57, 61 (1st Cir.1999). The case is now about fourteen days from one year of duration since accusation.