**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-4868**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLIE SONG,

Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.   Leonie M. Brinkema, District Judge.  (1:12-cr-00372-LMB-1)

———————

Argued:  May 17, 2013                Decided:  June 25, 2013

———————

Before NIEMEYER, AGEE, and THACKER, Circuit Judges.

———————

Vacated and remanded by unpublished per curiam opinion.

———————

**ARGUED:** Kevin R. Brehm, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Ryan K. Dickey, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, for Appellant.  Neil H. MacBride, United States Attorney, Alicia J. Yass, Special Assistant United States Attorney, Jonathan Keim, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Charlie Song appeals an order of the district court committing him to the Federal Bureau of Prisons ("BOP") for a mental status and competency examination pursuant to 18 U.S.C. §§ 4241(b), 4242(a), and 4247(b), and an order denying reconsideration of the same. Because we lack adequate findings upon which to decide whether the district court's commitment order is a proper exercise of its discretion, we vacate the commitment order and remand for further proceedings.

## I.

On August 23, 2012, a grand jury sitting in the Eastern District of Virginia returned an indictment charging Song with one count of attempted receipt of child pornography and one count of possession of child pornography. Song was arrested on August 27 and made his initial appearance before a magistrate judge the same day. During a detention hearing held the following day, August 28, the magistrate judge granted the Government's request that Song be detained pending trial. On August 29, Song moved to revoke the detention order. On September 5, during Song's arraignment, the district court released him on conditions of bail that included the appointment of two third-party custodians. In addition, the district court ordered that any pretrial motions be filed by September 19. Song filed several motions in advance of the September 19

2

deadline, including two motions to suppress, a motion to dismiss, and a motion for a bill of particulars.[1]

On October 9, 2012, Song filed a notice of intent to raise the insanity defense. The notice indicated that Song, who has suffered from schizophrenia throughout his life, intended to present a defense of insanity, as well as expert evidence relating to a mental condition bearing on the issue of guilt. That same day, Song also moved to reinstate the previously withdrawn motions. The following day, Wednesday, October 10, the district court ordered a "status" hearing to be held on October 16 to address several of Song's submissions. In that order, the district court stated in pertinent part,

> Before the Court are several pleadings filed by the defendant, a Notice of Insanity Defense and Expert Evidence of Mental Condition, Motion to Allow Late Filing of Notice and to Reset Trial, and Motion to Reinstate Previously Withdrawn Motions. For good cause shown and there being no objection by the government, a status hearing will be scheduled to address these and any other matters that have arisen. Accordingly, it is hereby
>
> > ORDERED that a status hearing be and is scheduled for Tuesday, October 16, 2013, at 11:00 a.m. before the undersigned judge.

J.A. 99 (brackets and emphasis omitted).[2]

---

[1] Song moved to withdraw these motions on September 28. The district court granted the motion the same day.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Two days after the status hearing notice, on Friday, October 12, Song filed a motion requesting that any mental health examination be conducted on an outpatient basis in the metropolitan area of Washington, D.C. The day before the scheduled hearing, October 15, the Government filed a response to Song's October 9 notice of intent to raise the insanity defense. In that response, the Government requested that Song be committed to the custody of the BOP for a mental health examination. The Government also submitted to the district court a video and transcript of a law enforcement interview of Song, which occurred on June 26, 2012.

On October 16, 2012, the district court held a 27-minute hearing during which the court addressed a number of pretrial motions, including, principally, the issue of Song's mental health. Neither before nor during the hearing did the district court ask the Government to present evidence supporting its request for a custodial examination, nor did it inquire if Song intended to present any evidence bearing on the same. Neither the Government nor Song presented any witness testimony or other evidence at the hearing.

Nonetheless, at the close of the hearing, the district court indicated in a brief discussion its intention to order Song to self-surrender to a BOP facility for a custodial mental health examination. The district court offered the following

4

rationale for granting the Government's request for a custodial examination:

> Now, the issue then is the type of examination that would be most appropriate. There are two options. One is the outpatient examination, which is normally just a couple of hours of interviews with a defendant.
>
> I think this case is more complicated than that and the defendant's condition more nuanced than that. Just again from my observations of the defendant in court, my review of his statement to the agents, and I haven't had a chance to review the tape but that will probably, I suspect present more information, but at this point, <u>my experience has been that the out-of-custody type of interviews just are not as thorough</u>, and in this case, the government's request for a residential custodial evaluation is in my view warranted. So I am going to grant the motion.

J.A. 196-97 (emphasis added). Following the hearing, the district court entered an order requiring Song's commitment for a custodial examination.

The next day, October 17, Song moved for reconsideration and submitted to the district court an excerpt from the Legal Resource Guide to the Federal Bureau of Prisons in support of his request for a non-custodial examination. The Government opposed the motion and submitted to the district court the Bureau of Prisons' Program Statement for Forensic and Other Mental Health Evaluations.

On October 23, 2012, the district court issued the two orders that are now before us on interlocutory appeal. The first order denied Song's motion for reconsideration of the

5

district court's initial order, entered October 16, 2012, which required Song to submit to a custodial examination. The second order directed Song to self-surrender to a BOP facility, preferably Federal Correction Institution Butner ("Butner"), for a reasonable time not to exceed 45 days to undergo a mental health examination. The district court explained that the examination should address whether Song is competent to stand trial; whether, during the commission of the acts constituting the offense, Song was unable to appreciate the nature and quality of the wrongfulness of his acts; and the bearing, if any, of any mental condition on the issue of guilt. Song noticed this appeal on November 1, 2012.[3]

## II.

While the parties do not dispute our jurisdiction to hear this appeal, we conclude the orders before us fall within the ambit of the collateral order doctrine. See United States v. Deters, 143 F.3d 577, 579-82 (10th Cir. 1998) ("[W]e hold that a commitment order issued pursuant to 18 U.S.C. § 4247(b), whether it be for the purpose of ascertaining competency to stand trial under section 4241 or for the purpose of evaluating insanity at the time of the offense under section 4242, is

---

[3] On November 2, 2012, Appellant filed an emergency motion to stay the mental health examination, which the district court granted later that day.

immediately appealable."); see also Sell v. United States, 539 U.S. 166, 176 (2003) (describing collateral order exception); United States v. Bowles, 602 F.3d 581, 582 (4th Cir. 2010) (same). We thus possess jurisdiction over this interlocutory appeal.

We review a district court's decision to order a custodial mental health examination pursuant to 18 U.S.C. §§ 4241 and 4247(b) for an abuse of discretion. See 18 U.S.C. § 4247(b) ("For the purposes of an examination pursuant to an order under section 4241, . . . the court may commit the person to be examined for a reasonable period, but not to exceed thirty days.") (emphasis added); Deters, 143 F.3d at 579 ("The district court . . . has the discretion to confine a defendant during the examination period."); United States v. Neal, 679 F.3d 737, 740 (8th Cir. 2012) (same); cf. United States v. Banks, 482 F.3d 733, 743 (4th Cir. 2007) ("We defer so to the district court because it is in a superior position to adjudge the presence of indicia of incompetency constituting reasonable cause to initiate a hearing [pursuant to 18 U.S.C. § 4241(a)].").

### III.

Song contends the district court violated his due process rights by failing to conduct an evidentiary hearing and make sufficient factual findings concerning the need for commitment to the BOP for a mental health examination. While

7

the Government does not dispute that Song should be afforded some due process protection, it essentially contends that the process below was sufficient. Specifically, the Government asserts the district court undertook a thorough review of the evidence and circumstances prior to determining that a custodial mental health examination was warranted.

Notwithstanding the parties' arguments in framing the issues as they perceive it, for purposes of this stage of the appellate proceedings, we can resolve the issue without the need to address their constitutional arguments. See Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 341-56 (1936) (Brandeis, J., concurring) (stating that courts should not "decide issues of a constitutional nature unless absolutely necessary"). Indeed, based on this record, we are unable to conduct an appellate review of the district court orders being appealed. See, e.g., J.H. Henrico Cnty. Sch. Bd., 326 F.3d 560, 567 (4th Cir. 2003) (vacating and remanding an Individuals with Disabilities Education Act action because the "appellate record [was] inadequate for effective appellate review").

A.

In response to Song's notice of intent to raise the insanity defense, the Government requested that Song undergo a custodial mental health examination. When the defendant files such a notice and the Government so moves, the district court

8

"shall order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4242(a). An examination regarding the defendant's sanity at the time of the offense was therefore required by statute; thus, we need only decide whether the district court properly ordered that the examination be conducted as a custodial examination.

As noted, Song's mental health examination must be conducted pursuant to 18 U.S.C. § 4247(b), which provides, "the court <u>may</u> commit the person to be examined for a reasonable period" -- up to 30 days for a competency examination and 45 days for a sanity examination -- "to the custody of the Attorney General for placement in a suitable facility." 18 U.S.C. § 4247(b) (emphasis supplied).[4] These time periods may be

---

[4] The provision states, in full, as follows:

(b) Psychiatric or psychological examination. -- A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner shall be designated by the court, except that if the examination is ordered under section 4245, 4246, or 4248, upon the request of the defendant an additional examiner may be selected by the defendant. For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed
(Continued)

9

extended by up to 15 days for a competency examination and up to 30 days for a sanity examination, according to statute. Id. However, the statute does not articulate a standard for determining under what circumstances a custodial examination is appropriate.

Although § 4247(b) uses the word "may" when describing a district court's ability to commit a person to the BOP for an inpatient competency examination, the statute does not grant a district court unbounded discretion to order such a commitment as opposed to an outpatient examination.[5] See United States v.

_____

> thirty days, and under section 4242, 4243, 4246, or 4248 for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, 4246, or 4248 upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

18 U.S.C. § 4247(b).

[5] While the Supreme Court has not articulated a specific test for determining when pretrial commitment of an accused for purposes of a custodial mental health examination is permissible under the Due Process Clause, we are confident that "[t]he institutionalization of an adult by the government triggers heightened, substantive due process scrutiny. There must be a 'sufficiently compelling' governmental interest to justify such action. . . ." Reno v. Flores, 507 U.S. 292, 316 (1993) (Continued)

<u>Neal</u>, 679 F.3d 737 (8th Cir. 2012); <u>United States v. Deters</u>, 143 F.3d 577, 582–84 (10th Cir. 1998); <u>In re Newchurch</u>, 807 F.2d 404, 409 (5th Cir. 1986).

B.

In support of his position that the mental health examination must be performed on an outpatient basis, Song relies on <u>Newchurch</u>, 807 F.2d 404, and <u>Neal</u>, 679 F.3d 737, cases that address the question presented here.

In <u>Newchurch</u>, the Fifth Circuit vacated a district court order committing a defendant to the custody of the Attorney General for a custodial examination because "[t]he government offered no evidence that the commitment of Newchurch . . . is necessary or that an examination adequate for determination of his sanity . . . cannot be conducted on an outpatient basis or by a confinement of short duration in a hospital near the place of trial." 807 F.2d at 410. <u>Newchurch</u> reasoned, "a district court should not exact such a deprivation of liberty" unless there is "some evidence that commitment is necessary." <u>Id.</u> To that end, the Fifth Circuit concluded, "the district court should make findings of fact concerning the need

_____

(O'Connor, J., concurring) (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 748 (1987)).

11

for commitment to the custody of the Attorney General." Id. at 412.

The Tenth Circuit in Deters, 143 F.3d 577, resolved the question likewise. The court in Deters held, "In ordering commitment pursuant to 18 U.S.C. § 4241, a 'district court should make findings of fact concerning the need for commitment,' and '[a]n appellate court should give appropriate deference not only to these findings but also to the conclusion reached by the district court' regarding the appropriateness of confinement." Id. at 584 (quoting Newchurch, 807 F.2d at 412). In Deters, unlike this case, the district court actually held an evidentiary hearing, discussed on the record the defendant's request that she be evaluated on an outpatient basis, and then made factual findings identifying two governmental interests -- the risk the defendant would not appear at trial and the defendant's unstable living conditions -- which justified the custodial examination. See id. at 583–84.

The Eighth Circuit recently adopted the Fifth Circuit's approach in Neal. The Neal court explained that the failure of the district court to "require the government to present evidence to justify the inpatient commitment, seriously consider the defendant's alternative request for an outpatient examination, or make findings of fact concerning the need for commitment," necessitated remand. See Neal, 679 F.3d at 741-42.

12

In the absence of such factual findings, the court concluded it was left unable to determine whether the district court's order satisfied due process. We face a similar circumstance in the case at bar.

C.

Unlike Deters, and more akin to the circumstances of Newchurch and Neal, the record below does not reveal specific factual findings on which the district court justified committing Song for a custodial examination. The Government directs us to its submissions, principally the video and transcript of a law enforcement interview of Song that occurred on June 26, 2012, which they claim raise serious concerns regarding the nature of his illness and subsequent insanity notice. However, the district court's own statement during the status hearing indicated the court did not review the video. See J.A. ("I haven't had a chance to review the tape. . . . "). In any event, although there is some support in the record that the district court considered the transcript of the interview, it is unclear how the interview bore on the need for a custodial rather than outpatient examination. Moreover, the district court's explicit reliance on its own personal experience in other cases does not satisfy due process, as it has no nexus to the specific commitment determination for Song. If the district court's sole rationale for choosing a custodial, as opposed to

13

an outpatient, format for the examination of Song is the court's subjective experience in other cases, then the court abused its discretion as a matter of law.  See Newchurch, 807 F.2d at 411-12 ("The district court should not undertake to evaluate the quality of outpatient examination as opposed to an examination conducted in the custody of the Attorney General solely on its personal past experience, for that experience is neither a matter of record, a subject for cross examination, nor a question susceptible to review on appeal.").

Because the district court did not receive evidence upon which to base a custodial finding for Song's examination or make explicit factual findings that would allow us to determine whether the district court properly exercised its discretion in this case, we are constrained to vacate the commitment order. Without a factual record upon which we can review the district court's commitment determination to ascertain whether its discretionary authority was properly exercised, we are unable to undertake our appellate review function.  See, e.g., JH v. Henrico Cnty. Sch. Bd., 326 F.3d at 567 (vacating and remanding action because the "appellate record [was] inadequate for effective appellate review"); FDIC v. Aroneck, 643 F.2d 164, 167 (4th Cir. 1981) (in reviewing a discretionary grant of an attorney's fee award, observing that "[e]ffective appellate review of such a discretionary determination is impossible . . .

14

unless [the appellate court] has before [it] the district court's reasons for finding a particular award appropriate," and vacating and remanding the judgment where the district court failed to the necessary findings of fact and to articulate the basis for its decision).

## IV.

In view of the foregoing, we vacate the district court's commitment order and remand this case for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>