**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Thamin SHAWAR, Defendant–Appellee.**

No. 87–2974.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1988.

Decided Jan. 6, 1989.

Francis D. Schmitz, Asst. U.S. Atty., Patricia J. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellant.

Clifford R. Steele, Cunningham, Lyons, Steele & Cabaniss, Milwaukee, Wis., for defendant-appellee.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The sole issue in this appeal concerns the procedure which a district court must follow after a defendant is found to be mentally incompetent to stand trial. Here, after making such a finding, the district court dismissed the charges against the defendant because there was no evidence that his condition would ever improve, and because he did not seem dangerous. Because the court did not comply with the procedures established by 18 U.S.C. § 4241(d) to govern such situations, we must reverse.

## I. Facts

Thamin Shawar entered the United States from Jordan at approximately age 11. He has a fifth grade education but is

unable to write or read in any language.[1] At the time of his indictment, he was married and had three young children. Additionally, Shawar has family members in the United States, including the brother who was indicted along with him.

Thamin Shawar and his brother Jamal were arrested for fraudulently submitting over 200,000 coupons (the type found in newspapers and magazines) to various manufacturers for redemption. Shawar made false representations to consumer product manufacturers that he owned three separate grocery stores in Milwaukee. As a result of this scheme, Shawar deposited over $40,000.00 in redemption checks into various bank accounts he had opened for his phony stores. The January 27, 1987 superseding indictment charged Thamin Shawar with seven counts of mail fraud. At that time, in accordance with 18 U.S.C. § 4241(b), the court ordered an examination to determine whether Shawar was competent to stand trial.

The district court appointed Dr. William Crowley, a psychiatrist, to examine Shawar. Dr. Crowley determined:

> As a result of my examination, it is my opinion to a reasonable degree of medical certainty that the defendant is suffering from a mental defect which renders him unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense. I, therefore, offer for adjudication the opinion that the defendant is not competent to stand trial.
>
> Because the condition which, in my opinion, renders the defendant incompetent is one of mental retardation rather than an illness, there is no reasonable likelihood that he will ever regain competence with treatment.

Dr. Leigh Roberts, another psychiatrist, also examined Shawar. He opined that Shawar "has borderline mental retardation" and was not going to improve. Further, Dr. Milton Silva, a psychologist, examined the defendant and conducted vari-ous tests, one of which indicated that Shawar's full scale IQ was 71, placing him "in the Borderline range of intelligence." These three written opinions were submitted to the court. The Government then requested that a competency hearing be conducted.

A competency hearing was held on March 3, 1987. At that time, defense counsel moved to dismiss the charges against Shawar because none of the doctors had concluded that he was competent to stand trial. The Government, on the other hand, requested that Shawar be committed to the Attorney General's custody, as required by 18 U.S.C. § 4241.

On August 26, 1987, the district court held another hearing. The court concluded that Shawar was, and always would be, incompetent to proceed to trial. On October 20, 1987, the court issued a decision and order granting Shawar's motion to dismiss the charges against him without prejudice. In this order, the district judge wrote that:

> All the doctors who have examined him have concluded he is not competent. It appears that his mental defect—which is mental retardation—will not change. Thus, it appears that he will not be "cured" by further treatment and that he will not be able to assist in his defense.... In this case, I have given the Government three opportunities to produce some evidence indicating that there was a possibility, even a remote one, that commitment of this defendant will do some good. Nothing has been presented. Accordingly, I grant the defendant's motion to dismiss the charges against him without prejudice.

On November 13, 1987, the Government petitioned the district court for a rehearing. In an order dated November 24, 1987, the court issued an order denying this petition. The Government appeals, challenging Judge Evans' refusal to commit Shawar and his dismissal of the indictment.

---

1. The report of one psychiatrist indicates that Shawar is essentially unable to read or write. Although he reads words in English, he cannot grasp the meaning of a simple sentence or paragraph.

## II. Commitment Under § 4241

■ There are three guiding principles to interpreting the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, Title II, Ch. IV, § 403, 98 Stat. 2057 (1984) (codified at 18 U.S.C. §§ 4241–4247), of which § 4241(d) is a part. The first of these principles is Congress' power to provide for the custody of persons charged with crime and awaiting trial under the necessary and proper clause of Article I of the Constitution. *Greenwood v. United States,* 350 U.S. 366, 375, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956) (upholding constitutionality of predecessor statute); *Higgins v. United States,* 205 F.2d 650, 652–53 (9th Cir.1953) (same). Second, this power of Congress is limited by the fact that care of insane persons is essentially the function of the several states. *Higgins,* 205 F.2d at 653; *accord United States v. Charters,* 829 F.2d 479, 486–87 (4th Cir.1987); *United States v. Baker,* 807 F.2d 1315, 1324 (6th Cir. 1986); S.Rep. No. 225, 98th Cong., 2d Sess. 250, 253, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3432, 3437 [hereinafter S.Rep. No. 225] (responsibility for care of insane persons is a function of the states; once federal charges against a hospitalized defendant are dropped, federal government does not have sufficient contacts with the person to justify continued hospitalization). Finally, commitment proceedings pursuant to statute must comport with due process. *Baker,* 807 F.2d at 1321 (quoting *Vitek v. Jones,* 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980)); *see also Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972) (defendant committed solely on account of lack of capacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the future).

### A. Language of the Statute

#### 1. Discretionary or Mandatory?

■ The issue for us to decide is how § 4241(d) should be interpreted. There are two possible readings of this statute. The first would mandate, in any case where the court finds a defendant incompetent, that it commit him to the custody of the Attorney General. The second reading, the one adopted by Judge Evans, would require the court to commit the defendant to the custody of the Attorney General for up to four months *only if* there is a probability that there will be a change in the defendant's mental condition.

Although the district judge obviously attempted to comply with what he felt to be the spirit of the statute, the statutory scheme established by Congress[2] clearly mandates that a defendant found to be incompetent be placed in a mental hospital for observation. Section 4241(d) of Title 18 reads:

> (d) Determination and disposition. If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him *mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.* The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> > (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the

**2.** Under 18 U.S.C. § 4241(a), on the defendant's, the Government's or the court's own motion, the trial court must order a hearing to determine the defendant's competency to stand trial if there is reasonable cause to believe that the defendant is incompetent. Section 4241(b) provides that the court may order a psychological examination pursuant to 18 U.S.C. §§ 4247(b) and (c) before the hearing. Section 4241(c) requires the competency hearing to be conducted pursuant to 18 U.S.C. § 4247(d), which provides for representation of the defendant by counsel, an opportunity for him to testify, to subpoena witnesses on his behalf and the opportunity to confront and cross-examine witnesses. The court then makes its determination and disposition pursuant to 18 U.S.C. § 4241(d), discussed *infra.*

capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246 [18 U.S.C. § 4246].

18 U.S.C. § 4241(d) (emphasis added).[3]

Based on the expert opinions, Judge Evans was satisfied that Shawar would never be competent and that treatment would not improve his condition. Thus, he determined in his October 20 decision and order that it would be "an empty exercise to commit Shawar to a federal facility for further testing," and read the statute to require that commitment only is mandatory if there is a possibility that the commitment will result in a change in the defendant's condition.

Although the position taken by Judge Evans was not unreasonable, the intent of Congress is clear. The statute plainly states that "the court *shall* commit the defendant to the custody of the Attorney General [who] shall hospitalize the defendant for treatment...." 18 U.S.C. § 4241(d) (emphasis added).[4] The plain meaning of this phrase is, and we hold it to be, that once a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him.

The crucial distinction which Congress has made seems to be this. The district judge has the power, by means of the competency hearing, to determine which defendants are competent to stand trial. He retains full authority to deal with those defendants he deems competent to stand trial. On the other hand, Congress has given authority over defendants declared incompetent by the district judge to the Attorney General.[5] This division of authority permits the district judge to carry out traditional federal judicial functions, and insures that the procedures used to commit the incompetent defendant to the custody of the Attorney General will comport with due process, yet recognizes the limitations on the federal courts in the field of mental

---

**3.** 18 U.S.C. § 4246 specifies the procedures to be followed in the case of a person who has been committed pursuant to § 4241(d) (or who is due for release) but is suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another, and suitable arrangements for state care and custody of the defendant are not available. Upon certification to this effect by the director of the facility where the defendant is hospitalized, the court must order a hearing on the dangerousness issue. 18 U.S.C. § 4246(c). As with § 4241, the court may order a pre-hearing psychological examination under §§ 4247(b) and (c), and it must conduct the hearing pursuant to § 4247(d). 18 U.S.C. §§ 4246(b), (c); *see* note 2 *supra*. If the court finds the defendant to be incompetent and dangerous, it must release him to the custody of the Attorney General. The Attorney General must then release the defendant to the custody of the state in which he is domiciled or was tried. If the state will not accept the defendant, the Attorney General must hospital him until the state will assume such responsibility or until the de-

fendant is no longer dangerous. The Attorney General shall periodically exert all reasonable efforts to cause a state to assume responsibility. 18 U.S.C. § 4246(d).

**4.** The legislative history is equally unambiguous (and equally terse) on this point. It says, "if the court makes a finding of competency, it *must* then commit the defendant to the custody of the Attorney General ...," S.Rep. No. 225 at 236, U.S.Code Cong. & Admin.News 1984, p. 3418 (emphasis added). *See also In re Newchurch*, 807 F.2d 404, 410 (5th Cir.1986) (provision in § 4247(b) providing that district judge *may* make temporary commitment for examination purposes makes power discretionary, not mandatory, because word "may," not "shall," was used). Thus, there is no need to apply, as the Supreme Court was forced to do in *Greenwood*, "the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." 350 U.S. at 374, 76 S.Ct. at 415.

**5.** This authority of the Attorney General also is limited. *See* 18 U.S.C. § 4247(i).

health. It does so by giving to the Attorney General the ability to seek treatment of incompetent defendants through appropriate state mental health procedures.[6] The statutory scheme also, as we will discuss below, gives the Attorney General the authority, if a defendant is found incompetent and committed to his custody, to conduct an in-depth evaluation of the defendant to assess the likelihood that he will regain competency and whether he is dangerous.

### 2. Likelihood of Recovery

■ At the August 26 hearing, Judge Evans asked the Government to have the defendant examined in an attempt to refute the expert evidence provided by the psychiatric reports. In making this request, the court told the Government:

> The question then is what is accomplished by committing a defendant in this situation to a federal facility to be examined for a four month period. If the Government had one iota of evidence here to convince me that treating him for four months or such a period of time, ... has a chance of changing the situation, I would commit him.

Additionally, the court stated:

> ... but if you come in here with any evidence that, any credible evidence that I find believable that there is a likelihood that he will improve as a result of a commitment to a federal facility here, I will grant the request and so commit him.

(R. 39, Tr. at 14–15).

Thus, the court effectively placed the burden on the Government to show that Shawar would improve with hospitalization. Since there was no evidence that the defendant ever would recover, the district judge not only refused to commit Shawar,

but also dismissed the Government's case against him. Along these lines, Shawar argues in his brief that since a finding already was made that he was incompetent and would not recover, the purpose of the statute already was fulfilled, and thus it was not necessary to commit him.

However well-intentioned Judge Evans' decision was, it misconceives, we believe, the statutory scheme envisioned by Congress. Our reading of 18 U.S.C. § 4241(d) is not only that commitment is mandatory, but also that likelihood of recovery is not something to be considered by the district court in deciding whether to commit the defendant for the evaluation period.[7] It is during the evaluation period that the Attorney General has up to four months to assess whether the defendant will regain competency to stand trial. See 18 U.S.C. § 4241(d). In other words, the burden is ultimately on the Government to come forward with evidence on the likelihood of the defendant's recovery. The statute makes it clear, however, that once a defendant is found incompetent, the Government is entitled to an in-depth evaluation of him, in order to determine whether he is likely to recover.

As the Government points out in its brief, an in-depth evaluation of Shawar may be beneficial, given that the examinations of him were relatively brief and possibly hindered by cultural and language differences. Moreover, not to commit Shawar, and to dismiss the case against him, would be to remove him from the system entirely. Thus, he might never receive proper mental care, whether at the hands of the federal government or of the state of Wisconsin.

### 3. Dangerousness of the Defendant

■ The district court expressed concern in hearings on Shawar's competency that,

6. Just how much power the Attorney General has in this regard is unclear. See note 11 infra.

7. In cases interpreting the predecessor statute, courts seemed to have taken likelihood of improvement in the defendant's condition into account in assessing whether an *indefinite* commitment was warranted, unless a finding of dangerousness (which we will discuss below),

also was made. See, e.g., Jackson, 406 U.S. at 732–33, 92 S.Ct. at 1855 (collecting cases); Greenwood, 350 U.S. at 373–76, 76 S.Ct. at 414–15 (likelihood of recovery not taken into account in initial commitment under predecessor statute where court made a finding of dangerousness). The period of commitment in § 4241(d), as discussed above, is limited.

because the defendant neither was charged with the commission of a violent crime, nor posed a danger to the person or property of others, yet was incompetent to stand trial, "that the Federal Courts are [not] very well equipped to deal with these kinds of situations." (R. 39, Tr. at 16). The fact that Shawar was a non-dangerous incompetent thus seems to have been part of the district judge's rationale for dismissing the case.[8] It is true that the language of the statute does not explicitly cover the non-dangerous incompetent. The district judge stated, however, his belief that the dangerousness (or lack thereof) of the defendant at the time of the commitment hearing is "just another one of the things that [courts] look to." *Id.*

The clear language of § 4241(d) does not provide for consideration by courts of whether the defendant is dangerous in deciding whether to commit him for the four month evaluation period. It provides only that the court find that the defendant is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Since the district judge found that Shawar was incompetent, finding that he is not dangerous does not make him any less so.

In cases interpreting the predecessor statute, courts have read that statute not only to authorize, but indeed to *require*, that dangerousness be considered at the initial commitment hearing, in cases where it seemed unlikely that the defendant would recover. *See Jackson,* 406 U.S. at 732, 92 S.Ct. at 1855 (quoting *Greenwood,* 350 U.S. at 374, 76 S.Ct. at 414–15); *United States v. Curry,* 410 F.2d 1372, 1374 (4th

Cir.1969). The current statutory scheme, however, seems to contemplate that the court will not consider the dangerousness of the defendant, with respect to the decision whether to commit him, until after the evaluation period,[9] and even then only if the procedures under § 4246 are followed.

In other words, it no longer is proper to consider dangerousness at the initial commitment hearing. The dangerousness issue only arises under the statute when the defendant already has been committed under § 4241 and the director of the facility where the defendant is hospitalized makes his certification to that effect under § 4246(a), or if a defendant is found not guilty by reason of insanity, and a hearing must be conducted under § 4243. *Cf.* 18 U.S.C. §§ 4243(c), (e), § 4246(a); 18 U.S.C. § 4247(c)(4)(C) (only if a psychiatric examination is ordered under § 4243 or § 4246 must the psychiatrist's report include his opinion as to whether the defendant's condition is such that, if he were released, he would pose a danger of bodily injury to or serious damage to the property of another).[10]

This reading of the current statute is entirely consistent with the Supreme Court's interpretation of the predecessor statute. In *Jackson,* it noted that without a finding of dangerousness, a defendant still can be committed for a reasonable time to determine whether there is a substantial chance he will attain the capacity to stand trial in the near future. 406 U.S. at 733, 92 S.Ct. at 1855; *see also Curry,* 410 F.2d at 1373. In other words, if a court could, under the predecessor statute, commit the

---

8. Shawar argues in his brief that the district judge made a finding, in response to the Government's motion for reconsideration, that Shawar was not dangerous. The Government is correct that the court made no "finding" that Shawar was not dangerous. It merely denied the motion for reconsideration. The court did, however, express its opinion at the August 26 hearing that the defendant did not seem to be dangerous.

9. It is important to note, however, that dangerousness *is* a factor to be considered by courts in deciding whether to release a defendant on bail. *See* 18 U.S.C. § 3142 (authorizing consideration of dangerousness in deciding whether to release

a defendant on bail or to detain him); *Salerno v. United States,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (upholding constitutionality of statute).

10. The very purpose of the certification requirement in § 4246, moreover, is to provide notice to the defendant that his dangerousness is in issue in deciding whether further commitment is appropriate under § 4246. *United States v. Baker,* 807 F.2d 1315, 1323–24 (6th Cir.1986) (calling by the judge of § 4246 hearing *sua sponte* without certification by the director violates the due process clause).

defendant for such an evaluation period without finding that he was dangerous, it would not be impermissible (if he otherwise was incompetent) to commit him for the evaluation period without considering dangerousness at all. This is the scenario we believe the plain language of the statute envisions.

Moreover, for the reasons we have discussed above, not only does the statute contemplate that consideration of dangerousness shall be deferred until the evaluation period, when an in-depth assessment can be made, but an in-depth assessment of Shawar's mental condition would be helpful in this particular case. Admittedly, it is not entirely clear what should happen after the initial commitment period to the non-dangerous individual who will never regain competency.[11] We need not, however, address that issue at this point. The only issue presented in this case with regard to commitment is what is to happen to the defendant in the initial commitment proceeding under § 4241. We hold that a judge who finds a defendant incompetent to stand trial under 18 U.S.C. § 4241 must commit him to the custody of the Attorney General.

### B. Due Process

█ Shawar argues that commitment of him to the custody of the Attorney General would, under the circumstances of this case, be an undue restriction of his liberty under the due process clause. For this proposition, he cites *In re Newchurch*, 807 F.2d 404 (5th Cir.1986).

*Newchurch* dealt with a court's power to make a temporary commitment, under 18 U.S.C. § 4247(b), of a defendant claiming the insanity defense under 18 U.S.C. § 4242. The court concluded in that case that the permissive language of § 4247(b), which used the word "may," as opposed to "shall," meant that the court either could commit the defendant to the custody of the Attorney General or could order that the examination be conducted in some other manner, 807 F.2d at 410. Because of this permissive language and other language in the statute, the court held that before a defendant could be committed under § 4247(b), the Government had to present evidence, subject to cross-examination and rebuttal, on why it could not adequately prepare for trial on the insanity issue by having the defendant examined as an outpatient. *Id.* at 411.

This case, however, is distinguishable from *Newchurch*. The reasoning of *Newchurch* applied to commitment under § 4247(b), not § 4241(d). As we have noted above, the language of § 4241(d) on commitment is mandatory, not discretionary. In *Jackson*, moreover, the Supreme Court,

---

11. In *Baker*, the Sixth Circuit opined:
We believe that [§ 4241] requires that a determination as to the individual's mental condition be made within four months, *and that the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time.*
807 F.2d at 1320 (emphasis added). 18 U.S.C. § 4247(h) provides, moreover, that counsel for the defendant or his guardian may file for his release at any time.
It is unclear, however, whether commitment proceedings can be instituted to commit the non-dangerous incompetent to state custody after the initial commitment period in the absence of a statutory directive to that effect. *See Jackson*, 406 U.S. at 731, 738, 92 S.Ct. at 1855, 1858 (cases interpreting the predecessor statute have found that without a finding of dangerousness, defendant only can be committed long enough to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future; after an initial commitment proceeding in *state* court where it is determined that the defendant will not regain competency in the foreseeable future, the state must either institute the customary civil commitment proceeding required to commit any other citizen, or release the defendant); *United States v. Geelan*, 520 F.2d 585, 588 (9th Cir.1975) (federal government's power under its commitment statutes is subject to these limitations). *See also* 18 U.S.C. § 4247(i)(B) (statute states that the Attorney General may apply for civil commitment of defendants committed under §§ 4243 and 4246, but does not mention § 4241). In other words, Congress has the power to direct that the Attorney General suggest proceedings to commit federal defendants who will never be competent to the state. The crucial issue would be whether the Attorney General can seek to have the non-dangerous defendant committed to state custody where the statutory language only mentions the dangerous incompetent. As noted above, however, this issue is not before this court.

while disapproving of indefinite commitment solely on grounds of incapacity, held that a defendant could, under such circumstances, be held for the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. 406 U.S. at 733, 738, 92 S.Ct. at 1855, 1858. In enacting the Insanity Defense Reform Act of 1984, Congress clearly was aware of the Court's decision in *Jackson,* and echoed its language in § 4241(d). *See* S.Rep. No. 225, at 236.

Shawar does not argue that the procedures used to find him incompetent were unconstitutional. What he challenges is a mandatory commitment under § 4241(d) upon a finding of incompetency. Such a commitment, we find, is consistent both with the statutory language, and with due process.

### III. Dismissal of the Indictment

The Government argues on appeal as an alternate ground for reversal that the district judge's dismissal of the indictment against Shawar improperly thwarted its prosecutorial discretion. Shawar argues in response that dismissal was permissible under the court's inherent supervisory powers. We found above, however, that the district judge improperly refused to commit Shawar pursuant to statute. It stands to reason that if he should have committed Shawar under the statute, he should not have dismissed the indictment thereunder. Thus, it is not necessary to decide the alternate, constitutional ground for decision. *See, e.g., Jean v. Nelson,* 472 U.S. 846, 854–55, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

### IV. Conclusion

We Reverse and Remand and direct the district court to commit Thamin Shawar to the custody of the Attorney General under 18 U.S.C. § 4241(d).