# UNITED STATES of America

v.

## John SHERMAN.

### No. 87 CR 849-1.

United States District Court, N.D. Illinois, E.D.

Oct. 23, 1989.

Thomas J. Scorza, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Jeffrey Steinback, Genson, Steinback & Gillespie, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On January 13, 1988 a grand jury indicted John Sherman of one count of attempted bank fraud and one count of conspiracy, in violation of 18 U.S.C. §§ 1344 and 371 (1982), respectively. Magistrate Joan Lefkow conducted Sherman's arraignment, at which time Sherman moved under 18 U.S.C. § 4241(a) (1984 Supp.) for a hearing to determine his competency to understand the nature and consequences of the proceedings against him and to assist in his defense. The magistrate granted Sherman's motion and ordered a psychiatric/psychological examination under id., § 4241(b). Sherman was examined, and the examining physician filed his report discussing that examination on April 27, 1988.

Since the filing of the report, this court has held two hearings to assess Sherman's competency pursuant to id., § 4241(c). At the first hearing, held June 3, 1988, this court found that Sherman was not competent to stand trial. Sherman's examining physician indicated that the best way to treat Sherman was to give him outpatient therapy, and so this is what the court ordered. The court also asked the treating physicians to report periodically about Sherman's progress.

Unfortunately for Sherman, what the court (and originally, both parties) thought was best for all concerned may have been beyond this court's power to order. On January 6, 1989, while Sherman was being treated, the Seventh Circuit decided *U.S. v. Shawar*, 865 F.2d 856 (7th Cir.1989). There the court held that once a judicial officer has found an accused to be incompetent to stand trial, the officer's sole course of action is to commit the accused to the custody of the Attorney General of the United States. See *id.* at 860–61; 18 U.S.C. § 4241(d) (1984 Supp.). The court held further that the accused's chances of recovering while in the custody of the Attorney General—something which weighed heavy in this court's mind with respect to Sherman—and the dangerousness of the accused were of no consequence to the court's duty to turn the accused over to the Attorney General once the court had found the accused to be incompetent. See *Shawar*, 865 F.2d at 861–63.

▉ Prompted by *Shawar*, the parties briefed the issues and submitted this matter for another hearing on August 17, 1989. Based on the testimony presented at the hearings held to date and the reports of Sherman's physicians, the court finds these facts:

(1) Sherman presently suffers from a mental disease or defect which renders him mentally incompetent, to the extent that he is unable to understand the proceedings against him or to assist properly in his defense.

(2) There is a risk that Sherman could suffer permanent harm were he institutionalized. This risk is not high, however, and so permanent harm is not certain.

In light of the court's findings of fact, the court commits Sherman to the custody of the Attorney General, pursuant to 18 U.S.C. § 4241(d) (1984 Supp.). *Shawar* ordains the result in this case, and the court believes it has no choice but to follow § 4241(d) to the letter. The court believes, however, that § 4241(d) is ambiguous as to what the Attorney General must do once Sherman is in his custody. The statute provides that once the court has found that the defendant is incompetent, "the court shall commit the defendant to the custody of the Attorney General." That much is clear. The statute then states: "The Attorney General shall hospitalize the defendant for treatment in a suitable facility" for a given period of time. Here is where the statute becomes ambiguous. Webster's Third New International Dictionary (1967) defines "hospitalize" as "to place in a hospital as a patient." Congress's use of

this verb suggests that it wanted the Attorney General to place mentally incompetent defendants in institutions, something which according to the testimony presented to this court could lead to permanent harm for certain defendants. The court questions whether such a result would be consistent with the Due Process Clause of the Fifth Amendment to the Constitution.* See *Addington v. Texas,* 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323 (1979) (individual's interest in the outcome of civil commitment "is of such weight and gravity that due process requires the [government] to justify commitment by proof more substantial than a mere preponderance of evidence.").

Fortunately, there is another meaning that one could put on the word "hospitalize" as it appears in § 4241(d): to place. The statute requires "treatment in a suitable facility." Section 4247(a)(2) defines "suitable facility" as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." Section 4247(i)(C) requires the Attorney General "before placing a person in a facility pursuant to . . . section 4241 [to] consider the suitability of the facility's rehabilitation programs in meeting the needs of the person." Congress's repeated emphasis on suitable facilities in these provisions indicates that it did not intend for the Attorney General to put mentally incompetent defendants into a hospital automatically upon a judicial finding of incompetency. Instead, Congress wanted the Attorney General to give the accused the treatment which the accused needs to become competent to stand trial. Such an interpretation avoids the constitutional problems that could arise when institutionalization would harm the accused, rather than help.

It is in this spirit that the court commits John Sherman to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d). The conduct of the government in this case encourages the court that the Attorney General will discharge his statutory obligations properly, with the aim of helping John Sherman achieve better mental health.

* The court in *Shawar* did not answer this question, as there was no contention that institutionalization of the defendant there would result in harm. Rather, the trial court in *Shawar* found only that institutionalization would not cure the defendant. See *Shawar,* 865 F.2d at 858.