**UNITED STATES of America**

v.

**Robert Allen STANFORD, Defendant.**

**Criminal Action No. H–09–342.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 26, 2011.

Gregg Jeffrey Costa, James L. Turner, Office of the U.S. Attorney, Financial Litigation, U.S. Attorney's Office, Southern District of Texas, Houston, TX, Jackie B. Patrick, Matthew A. Klecka, Paul E. Pelletier, Andrew Howard Warren, William Stellmach, U.S. Dept. of Justice, Washington, DC, for Plaintiff.

*ORDER FOR PSYCHIATRIC EVALUATION*

DAVID HITTNER, District Judge.

Pending before the Court is a Memorandum of Law in Support of Motion for Relief and Medical Treatment (Document No. 397). Having considered the motion, testimony and oral argument presented during a hearing held on January 6, 2011, and the applicable law, the Court determines the motion should be granted in part and denied in part.

*BACKGROUND*

On June 18, 2009, a federal grand jury for the Southern District of Texas returned a twenty-one count indictment charging Defendant Robert Allen Stanford ("Stanford") and others with, *inter alia,* conspiring to commit securities fraud and money laundering, and conspiring to obstruct and obstructing an investigation of the Securities and Exchange Commission.

On June 30, 2009, the Court granted the Government's motion for revocation of release and committed Stanford to pretrial detention. After carefully considering the evidence presented during a hearing, reviewing the full transcript of the magistrate judge's detention hearing, hearing argument from counsel, and applying the factors enumerated in the Bond Reform Act of 1984, 18 U.S.C. § 3141, *et seq.,* the Court concluded that Stanford is a serious flight risk and no condition or combinations of conditions would reasonably assure his appearance at trial.[1]

In September 2009, Stanford sustained a head injury during a confrontation with another inmate at the Joe Corley Detention Facility in Conroe, Texas. He underwent surgery to repair facial fractures. Thereafter, Stanford was relocated to the Federal Detention Center ("FDC") in Houston, Texas.

After the incident, and upon request of defense counsel, Victor Scarano, M.D., a forensic psychiatrist, evaluated Stanford. Dr. Scarano met with Stanford on October 19, 2009 and again on October 30, 2009. Dr. Scarano then reevaluated Stanford in April of 2010 and on November 27, 2010.

On December 9, 2010, counsel for Stanford moved the Court to hold an evidentiary hearing on Stanford's competency after Dr. Scarano opined that Stanford is not competent to stand trial.[2] The Government then moved to appoint Steven Rosenblatt, M.D., a forensic and clinical psychiatrist, to evaluate Stanford's mental capacity and provide a second opinion of his mental state. The Court granted the Government's motion. In addition, defense counsel requested David Axelrad, M.D., a forensic psychiatrist and neuropsychiatrist, to interview Stanford and offer a third opinion. Dr. Scarano prepared a report of his findings and filed it under seal with the Court. Dr. Rosenblatt submitted a letter to the Government, reporting his findings, which was also filed under seal with the Court. After the hearing, Drs. Scarano and Axelrad submitted letters to Stanford's defense counsel, summarizing their recommendations, which were also filed with this Court.

On January 6, 2011, the Court held a hearing pursuant to Stanford's motion to determine competency under the Insanity Defense Reform Act of 1984, 18 U.S.C.

---

1. The United States Court of Appeals for the Fifth Circuit has three times upheld the Court's ruling and, in the most recent appeal, the United States Supreme Court denied a writ of certiorari. *See infra.*

2. Dr. Scarano testified that, although he had examined Stanford before, this was the first time counsel for Stanford specifically requested he complete an exam to determine whether Stanford is competent to stand trial and offer an opinion accordingly.

§ 4241, *et seq.* All three psychiatrists testified at the hearing. Dr. Scarano concluded that, based on the psychological testing he performed during his evaluations on Stanford,[3] Stanford's mental state renders him unable to effectively and rationally assist his attorneys in developing a defense for the charges against him. Dr. Scarano testified that this is a result of over-medication, which has led to an addiction,[4] or the injury Stanford sustained in September 2009. Dr. Rosenblatt, the Government's expert, also testified that Stanford is not competent to stand trial. He testified that Stanford is suffering from delirium, an organic brain syndrome, which prevents him from adequately assisting his attorneys to prepare his defense. He was uncertain whether the medications Stanford is currently taking are the root of that mental condition, or whether the condition stems from the head injury Stanford sustained in September 2009. Dr. Axelrad's testimony corroborated Dr. Rosenblatt's testimony that Stanford has some form of delirium caused by either Stanford's addiction to the medications he is currently taking or perhaps soft tissue damage, a result of the September 2009 head injury.

Although the three psychiatrists could not identify the exact cause of Stanford's diminished mental capacity, they opined it could be one or a combination of the following: (1) over-medication, which has led to an addiction; (2) brain damage caused by the head injury he sustained in September 2009; and/or (3) Major Depressive Disorder. All three agreed Stanford should be withdrawn from his medications. Dr. Scarano testified this process could take between three months and six months. Dr. Rosenblatt testified it could take between two weeks and two months. Dr. Axelrad testified the withdrawal could take between four weeks and three months. All of the psychiatrists explained withdrawal symptoms could cause adverse side effects if performed improperly. Accordingly, the psychiatrists recommended Stanford be placed in an in-patient psychiatric facility with full-time medical supervision while he is being withdrawn from the medication. They agreed that once Stanford's medication is reduced or discontinued, the cause of Stanford's impaired mental capacity will be more easily discernable. Dr. Rosenblatt and Dr. Axelrad also testified, and Dr. Scarano agreed in a letter to defense counsel filed with this Court, that Stanford would benefit from undergoing neuropsychological examinations to determine the residual effects, if any, of the injury he sustained in September 2009.

In addition to the psychiatrists' testimony, the Government called Daniel Fox, Ph. D., a psychologist at the FDC, as well as Captain Scott Fauver, the chief security officer at the FDC, to testify. Both testified to their observations of and interactions with Stanford at the FDC. Dr. Fox testified he has had several interactions with Stanford, though most were brief.

---

**3.** Dr. Scarano conducted a battery of psychological tests on Stanford. He concluded that all but one of those tests indicate Stanford's cognitive abilities are superior, above-average, or average. The only test Dr. Scarano reported indicates Stanford has below-average cognitive ability was his performance on the Trails A test. Dr. Scarano found this concerning because Stanford had tested well (within the normal range) on this test in October 2009 but tested poorly (outside the normal range) when he completed it in November 2010. Dr. Scarano believed this was an indication that Stanford was "deteriorating."

**4.** The testimony revealed that Stanford is currently taking at least three medications to treat his anxiety and depression—clonazepam (Klonopin), mirtazapine (Remeron), and sertraline (Zoloft). The psychiatrists testified that especially the clonazepam dosage prescribed for Stanford was high in comparison to what they typically observe prescribed.

He testified Stanford, for the most part, seemed to be aware of his surroundings and was able to engage in short conversations. Captain Fauver testified that e-mails and telephone conversations between Stanford and his family and friends during his pretrial detention at the FDC demonstrate Stanford is able to think clearly and communicate rationally about a variety of issues, including issues regarding his case.

Following the competency hearing, the Government and Stanford's defense counsel submitted motions based on the testimony and evidence presented. The Government contends that Stanford is not legally incompetent, but moves the Court to nevertheless commit Stanford to a "suitable facility," as defined by 18 U.S.C. § 4247(a)(2), for a psychiatric evaluation pursuant to 18 U.S.C. § 4247(b). Stanford's defense counsel, on the other hand, contend that Stanford is legally incompetent to proceed to trial at this time and moves the Court to make a specific judicial determination to that extent. Further, they argue that Stanford should be released on bond so that he can commit himself into a private medical facility and remain on bond until the trial commences.

### STANDARD OF REVIEW

■ The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. *Cooper v. Okla.*, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Godinez v. Moran*, 509 U.S. 389, 394, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). In relevant part, the Fourteenth Amendment provides, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. When making a competency determination, the court looks not to the mental condition of the accused at the time of the alleged offense, but rather is concerned with "whether the defendant is able to confer intelligently with counsel and to competently participate in the trial of his case." *United States v. Collins*, 491 F.2d 1050, 1053 (5th Cir.1974). The standard for determining competency is whether, by a preponderance of the evidence, the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *see also* 18 U.S.C. § 4241(d) (adopting the *Dusky* standard for a judicial finding of incompetency and requiring a defendant to be able to "understand the nature and consequences of the proceedings against him or to assist properly in his defense").

The Insanity Defense Reform Act of 1984, 18 U.S.C. § 4241, *et seq.*, guides the court in situations where an accused is presumed to be or is deemed legally incompetent. Once a court makes a judicial finding that the defendant is legally incompetent, section 4241(d) instructs that the court "shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d).

### LAW & ANALYSIS

#### A. Competency to Stand Trial

■ It is uncontested that Stanford understands the nature and consequences of the proceedings against him. Thus, the issue before the Court is whether Stanford is able to adequately assist his attorneys to prepare his defense. At the hearing, all three psychiatrists testified that, after independently examining Stanford and reviewing his relevant medical records, Stanford lacks the mental capacity to stand trial at this time based on his apparent

limited ability to assist his attorneys in preparing his defense.

The Government correctly points out that the opinions of the psychiatrists are not binding on the Court's judicial determination of Stanford's competency. *See, e.g., United States v. Gray,* 421 F.2d 316, 318 (5th Cir.1970); *Feguer v. United States,* 302 F.2d 214, 236 (8th Cir.1962). In support, the Government cites *Benefiel v. Davis,* 357 F.3d 655, 659–60 (7th Cir. 2004) and *United States v. Gigante,* 996 F.Supp. 194, 200–01 (E.D.N.Y.1998).[5] In both cases, the trial court declined to adopt the opinions of mental health experts. *Benefiel,* 357 F.3d at 659–60; *Gigante,* 996 F.Supp. at 200–01. It is well-settled that it is the duty of the court, not the psychologists or psychiatrists, to make a specific judicial determination of whether a defendant is competent to stand trial. 18 U.S.C. § 4241(d); *see also United States v. David,* 511 F.2d 355, 360, n. 9 (D.C.Cir.1975) (citing *Cooper v. United States,* 337 F.2d 538, 539 (D.C.Cir.1964), *cert. denied,* 382 U.S. 1029, 86 S.Ct. 653, 15 L.Ed.2d 542 (1966)). Thus, the Court is not required to adopt the opinions of psychiatrists or psychologists, but may use expert testimony and reports in making its finding. 18 U.S.C. § 4241(d); *David,* 511 F.2d at 360.

The Government urges the Court to strongly consider Dr. Fox's and Captain Fauver's testimony and decline to find Stanford incompetent. The Government moves the Court to, instead, commit Stanford to as suitable facility for a psychiatric evaluation.[6] Dr. Fox and Captain Fauver testified that Stanford is able to engage in small talk, work on his defense, and correspond through e-mails and telephone calls with his family and friends. Dr. Fox and Captain Fauver testified that they did not observe anything unusual about Stanford's behavior with two exceptions: Dr. Fox's testimony regarding a conversation he had with Stanford, during which Stanford had delayed responses, and Captain Fauver's testimony regarding a handful of completely incoherent e-mails Stanford wrote immediately prior to his psychiatric evaluations. But this testimony, while it raises a possibility that Stanford is malingering, is not from " 'witness[es who have] had prolonged and intimate contact with the accused.' " *Gray,* 421 F.2d at 318 (quoting *Wright v. United States,* 250 F.2d 4, 10 (D.C.Cir.1957) (internal citation omitted)). Dr. Fox and Captain Fauver have had some contact with Stanford. Dr. Fox testified he has held approximately three formal meetings with Stanford and has walked with him to and from the offices of the FDC medical doctors when necessary. Captain Fauver testified he spoke with Stanford upon his arrival at the FDC and currently monitors Stanford's e-mails and telephone calls. The Court is not convinced the total interactions of Dr. Fox and Captain Fauver with Stanford approach the required threshold of "prolonged and intimate contact." *See Gray,* 421 F.2d at 318.

---

**5.** In *Benefiel v. Davis,* the Court of Appeals for the Seventh Circuit held an Indiana state court trial judge "knew manipulation when he saw it" when determining a defendant, who had twice been found competent after two hearings, was competent to continue the penalty phase of his trial. *Benefiel,* 357 F.3d at 659–60. The court declined to "tak[e] from the judge the ability to assess the credibility and persuasiveness of the evidence." *Id.* at 660. In *United States v. Gigante,* the district court determined a 69–year–old was fully competent to assist his attorneys and was "deliberately feigning mental illness to avoid the punishment which he fears." *Gigante,* 996 F.Supp. at 201–02, 238.

**6.** Title 18 U.S.C. § 4247(b) allows the Court to commit an accused found to be incompetent to a psychiatric medical facility for a psychiatric evaluation for a period of thirty days, with a possible extension of fifteen days.

Stanford's counsel, on the other hand, contend Stanford is legally incompetent to proceed to trial at this time. The Court agrees. In light of the testimony presented and the reports submitted by the three psychiatrists—*including the Government's own expert, Dr. Rosenblatt*—the Court has no viable alternative but to find that Stanford does not have the present mental capacity to effectively assist his attorneys in preparing his defense, comporting with the Due Process Clause of the Fourteenth Amendment. While the Court does not blindly adopt the opinions of the three psychiatrists, the Court weighs heavily their testimony in making its judicial determination because of the evaluations they conducted, their credentials in their fields, and most significantly, their unanimity. Accordingly, the Court finds Stanford is incompetent to stand trial at this time based on his apparent impaired ability to rationally assist his attorneys in preparing his defense.

## B. Commitment to the Custody of the Attorney General

■ The Insanity Defense Reform Act is clear that, once a court finds a defendant lacks the mental capacity to proceed to trial, the court must commit the defendant to the custody of the Attorney General. 18 U.S.C. § 4241(d) (stating that the court shall commit the defendant to the custody of the Attorney General upon consideration of sufficient evidence that the defendant is presently incompetent to stand trial); *see, e.g., United States v. Ferro,* 321 F.3d 756, 760–61 (8th Cir.2003) (holding that while the district court has the discretion to deem a defendant incompetent, it does not have the discretion to determine whether the defendant will likely attain the capacity to stand trial prior to being committed to the custody of the Attorney General); *United States v. Shawar,* 865 F.2d 856, 860 (7th Cir.1989) (interpreting Congress's intent in drafting 18 U.S.C. § 4241

and holding, "[t]he plain meaning of this phrase is, and we hold it to be, that once a defendant is found incompetent to stand trial, a district judge has *no discretion* in whether or not to commit him." (emphasis added)). Thus, because the Court has found that Stanford lacks the mental capacity to effectively assist his attorneys in preparing his defense at this time, the Court must commit Stanford to the custody of the Attorney General.

The statute explains that the Attorney General shall then hospitalize the defendant for treatment in a suitable facility for a given period of time. 18 U.S.C. § 4241(d). A suitable facility, as defined by the statute, is one that can provide care and treatment commensurate with a defendant's characteristics. 18 U.S.C. § 4247(a)(2). This hospitalization will allow for the reduction in Stanford's medications. It will further allow for a more thorough competency assessment via sustained evaluation by staff members who are familiar with the *Dusky* standard. *See Featherston v. Mitchell,* 418 F.2d 582, 585–86 (5th Cir.1969). This will provide the Court "with a more complete picture of the defendant's mental competency." *United States v. Weston,* 36 F.Supp.2d 7, 13–14 & n. 11 (D.D.C.1999).

Despite clear guidance provided by the governing statutes and relevant case law, Stanford again requests that the Court release him on bond, pursuant to the Bond Reform Act, 18 U.S.C. § 3141 *et seq.,* to "home confinement, with the option of electronic monitoring, and/or hospitalization on an outpatient basis for treatment." Stanford's defense counsel argue that the Court has the authority to commit Stanford to a private, local medical facility, because they perceive ambiguities in the statute. In support, defense counsel cite several cases commenting on ambiguities in the statutes regarding the medical

treatment of incompetent defendants.[7] None of the scenarios discussed in the

**7.** First, Stanford's defense counsel cite a footnote in *United States v. Shawar*, 865 F.2d 856, 860, n. 11 (7th Cir.1989). In *Shawar*, the Seventh Circuit perceived ambiguities in the statute regarding the authority of the Attorney General maintain custody of a defendant deemed "non-dangerous" who may never regain competency after the initial commitment period. *Shawar*, 865 F.2d at 860, n. 11. While the court comments on the perceived ambiguity, that issue was not before the court in *Shawar*, it was not resolved by *Shawar*, and it is not before this Court. Further, this does not support Stanford's counsel's position that Stanford should be allowed to admit himself into a private medical facility as a result of the Court's finding he is incompetent.

Second, they cite *United States v. Wheeler*, 744 F.Supp. 633, 637–39 (E.D.Penn.1990). In *Wheeler*, the district court discussed perceived gaps in 18 U.S.C. § 4246 regarding post-commitment procedures for an incompetent defendant. *Wheeler*, 744 F.Supp. at 637–39. But 18 U.S.C. § 4246 addresses the procedures and possible hospitalization of a person still suffering from mental disease or defect after the four-month commitment period provided for in the statute. This is similar to the issue in *Shawar*, but again, is not at issue here. Stanford has not yet been admitted into a medical facility and is not due for release. Any question about post-commitment treatment is premature, and will be considered at the appropriate time if necessary.

Third, defense counsel rely on *United States v. Sherman*, 722 F.Supp. 504, 505 (N.D.Ill. 1989), for the proposition that 18 U.S.C. § 4241 leaves open the possibility of alternative options for the Attorney General to treat a defendant who may not benefit from such treatment. *Sherman*, 722 F.Supp. at 505. But in *Sherman*, the court is adamant the only option for the court is to commit the defendant to the custody of the Attorney General upon a finding the defendant is incompetent. *Id.* at 505 ("[T]he court believes it has no choice but to follow § 4241(d) to the letter."). Even if the Attorney General has the option of where to send or how to treat a defendant found to be incompetent, it does not follow that the court possesses those same options. Moreover, Stanford's defense counsel contend that Stanford is mentally incompetent to stand trial pursuant to 18 U.S.C. § 4241, and needs to be and will benefit from being hospitalized in a facility outside the Bureau of Prisons. Their position is undermined by this authority, which may leave open the option for the Attorney General to consider hospitalization as treatment.

Fourth, defense counsel cite *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In *Jackson*, the United States Supreme Court held that a state statute could not compel a defendant to be committed for more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain capacity in the foreseeable future. *Jackson*, 406 U.S. at 738, 92 S.Ct. 1845. Again, this is not an issue before the Court. Stanford has not yet been committed and his term of custody with the Attorney General is not about to expire. Regardless, *Jackson* does not support Stanford's motion to be released to a medical facility of his choosing.

Finally, they cite *Vitek v. Jones*, 445 U.S. 480, 495–96, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) for the proposition an involuntary transfer of a prisoner to a mental hospital implicates a liberty interest protected by the Fourteenth Amendment's Due Process Clause. In *Vitek*, the Court considered the constitutionality of a state statute permitting prisoners—not an accused who is awaiting trial—to be committed to a mental facility without procedural protections such as notice and a hearing—all of which Stanford had as a pretrial detainee. *Vitek*, 445 U.S. at 495–96, 100 S.Ct. 1254. Again, this is not on point. Stanford was afforded all of the due process protections discussed in *Vitek*. Stanford's defense counsel alerted the Court to Stanford's alleged current mental condition; thereafter, the Court held a full evidentiary hearing pursuant to 18 U.S.C. § 4241(b).

None of these cases squarely address, let alone support, Stanford's defense counsel's position that the Court has the discretion to release Stanford to a private medical facility following the Court's finding that Stanford is incompetent to stand trial. To the contrary, all of these cases reiterate the Court's obligation that, upon finding by a preponderance of the evidence that Stanford is incompetent to stand trial, the Court must commit Stanford to the custody of the Attorney General. *See, e.g.,* 18 U.S.C. § 4241(d); *Vitek*, 445 U.S. at 495–96, 100 S.Ct. 1254 (discussing the procedural rights triggered when an incarcerated person is deemed incompetent); *Jackson*,

cases are applicable or relevant to the issue before the Court. Importantly, these cases do not revise or alter the plain language of the applicable statute or the relevant case law, which require the Court to commit Stanford, who has been found to be incompetent to stand trial, to the custody of the Attorney General.

It is not lost on the Court that Stanford's motion to be released to a local mental facility for treatment may be yet another attempt by Stanford to be released on bond. The Court's finding that Stanford is incompetent, however, does not alter the Court's finding that Stanford is a flight risk and that no combination of conditions of pretrial release can reasonably assure his appearance at trial. *See United States v. Stanford,* 722 F.Supp.2d 803 (S.D.Tex.2010); *United States v. Stanford,* 630 F.Supp.2d 751 (S.D.Tex.2009). On three occasions, the Court of Appeals for the Fifth Circuit has upheld that determination and rejected Stanford's attempts to obtain bond. *See United States v. Stanford,* 394 Fed.Appx. 72 (5th Cir.2010) (not selected for publication), *cert. denied,* —— U.S. ——, 131 S.Ct. 1028, 178 L.Ed.2d 850 (2011); *United States v. Stanford,* 367 Fed.Appx. 507 (5th Cir.2010); *United States v. Stanford,* 341 Fed.Appx. 979 (5th Cir.2009). Neither the case law cited nor the arguments made by Stanford's defense counsel convinces or compels the Court to change its finding.

Accordingly, the Court hereby

ORDERS that the Memorandum of Law in Support of Motion for Relief and Medical Treatment (Document No. 397) is GRANTED to the extent the Court finds that Stanford is incompetent to stand trial at this time. The Court further

ORDERS that the Memorandum of Law in Support of Motion for Relief and Medical Treatment (Document No. 397) is DENIED to the extent defense counsel seek the Court to release Stanford on bond, so he can undergo treatment at a private medical facility in Houston, Texas, or for any other reasons. The Court further

ORDERS that Stanford be committed to the custody of the Attorney General and undergo medical treatment for his current impaired mental capacity. The Court further

RECOMMENDS that the Attorney General send Stanford to a medical facility within the Bureau of Prisons, such as the Federal Medical Center in Butner, North Carolina or to another suitable facility as defined by 18 U.S.C. § 4247(a)(2), that has the capability to (i) psychiatrically and psychologically treat Stanford and ensure that Stanford's medications do not cause mental impairment, (ii) conduct subsequent psychiatric and neurological testing, and then (iii) conduct a competency examination. The Court further

ADMONISHES the attorneys representing the Government and Stanford to diligently prepare this case to proceed to trial notwithstanding Stanford's absence. All other relief not specifically granted herein is DENIED.

406 U.S. at 747–18, 92 S.Ct. 1845 (discussing a state statute and finding that the state may not indefinitely hold a prisoner simply based on an incompetency finding); *Shawar,* 865 F.2d at 863 ("We hold that a judge who finds a defendant incompetent to stand trial under 18 U.S.C. § 4241 must commit him to the custody of the Attorney General"); *Wheeler,*

744 F.Supp. at 637–39 (discussing procedures to be followed post-commitment of an incompetent defendant); *Sherman,* 722 F.Supp. at 505 (citing 18 U.S.C. § 4241, "The statute provides that once the court has found that the defendant is incompetent, 'the court shall commit the defendant to the custody of the Attorney General.' That much is clear.").